**BRINCO MINING LTD., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 82–1165.**

United States District Court, District of Columbia.

Dec. 2, 1982.

John D. Aldock, Nancy J. Bregstein, of Shea & Gardner, Washington, D.C., for plaintiff.

Herbert J. Miller, Jr., Stephen L. Nightingale, James E. Rocap, III, of Miller, Cassidy, Larroca & Lewin, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SIRICA, Senior District Judge.

This matter is before the Court on defendant's motion to dismiss and on a motion by plaintiff for summary judgment. The plaintiff is a Canadian corporation whose principal place of business is Vancouver, British Columbia. The defendant is an American insurance company which insured the plaintiff under two separate policies for the period from October, 1974 to October, 1975. The plaintiff corporation began its corporate existence in 1952 and obtained insurance coverage for its mining activities with four insurance companies from then until 1976 when insurance became unavailable for asbestos related businesses. The plaintiff has brought suit in this Court seeking a declaratory judgment to the effect that the defendant is jointly and severally liable with plaintiff's other insurers for both indemnification and legal defense costs associated with over 2,000 asbestosis suits currently in progress throughout the United States. In addition, plaintiff seeks a judgment in this Court that the defendant has breached its contractual obligation to pay claims and assume the defense of these hundreds of claims.

The Court must first address the defendant's motion to dismiss this cause of action in favor of a Canadian suit instituted by plaintiff in 1979, some three years prior to the present suit. The Canadian suit is currently pending before the Supreme Court of Ontario. In order to properly understand the position of the case before this Court a lengthy factual and legal discussion of both cases is necessary.

## BACKGROUND

The plaintiff instituted suit in the Supreme Court of Ontario in 1979 against the four insurance companies with whom it had contracted for coverage over a twenty-four year period. Two of the companies, Commercial Union Assurance Company and the Royal Insurance Company, are Canadian domicilliaries and thus cannot be sued by Brinco under this Court's diversity jurisdiction. The third insurance company that has been joined in Brinco's consolidated Canadian lawsuit is the American Home Insurance Company. American Home Insurance is a domicilliary of the United States but, to the best of the Court's knowledge, has not been brought into the present action by either plaintiff or the defendant. The fourth defendant in the Canadian suit is Federal Insurance Company, the defendant in the case before this Court.

In fact, the Canadian lawsuit was originally initiated by the plaintiff in separate causes of action against its four insurers. The four separate cases were consolidated by the Ontario Supreme Court on October 20, 1981 upon the motion of the plaintiff. While the parties disagree as to the state of progress in the Canadian consolidated suit, at least three of the four insurance companies have filed a Statement of Defence, the Canadian equivalent to an answer under the Federal Rules of Civil Procedure, to Brinco's Consolidated Statement of Claim. Estimates on the likely date of disposition for the Canadian suit range from twelve months to two years from now. *See* Defendant's Affidavit of Barrister Dutton, July 8, 1982 ¶ 18; Plaintiff's Affidavit of Barrister Falby, June 28, 1982 ¶ 6.

The present suit was filed by the plaintiff on April 27, 1982, some eight weeks after the Supreme Court denied *certiorari* in the case of *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). The District of Columbia Circuit Court of Appeals in *Keene* adopted what has probably become the broadest viewpoint on insurer liability for suits by those afflicted with the insidious disease of asbestosis. The Canadian courts have yet to address the difficult issue raised in *Keene* and it is likely that the pending suit in Canada will force some final resolution of the Canadian law on the issue of insurer liability for asbestosis injuries. For the purposes of this case, however, it is sufficient to observe that the District of Columbia Circuit's position in the *Keene* case has not been adopted by any other federal or state court in the United States.[1] Instead, the other courts of the United States which have addressed the issue of what constitutes an "injury" triggering coverage pursuant to boilerplate insurance contracts in asbestosis litigation have reached more narrow interpretations. Of course, this is not to imply that the conclusion reached by the D.C. Circuit in *Keene* is in any sense erroneous. Rather, recognition

of the fact that this Circuit, through the opinion of Judge Bazelon writing for the *Keene* court, arrived at a position directly opposite to that of Chief Judge Coffin writing for the First Circuit in *Eagle-Picher Industries v. Liberty Mutual Insurance Co.,* 682 F.2d 12 (1st Cir.1982), can only serve to underscore the conclusion that reasonable minds can reasonably differ on the precise scope of coverage afforded by similar insurance policy language. Moreover, this observation is offered as more than simply a restatement of the obvious. While the Court need not rule at this time, the Court notes that because almost all aspects of the contract at issue took place in Canada there is a high likelihood that Canadian insurance law will govern the construction of the insurance contract in this case. *See Steorts v. American Airlines, Inc.,* 647 F.2d 194 (D.C.Cir.1981); *Mariner Water Renaturalizer, Inc. v. Aqua Purification Systems, Inc.,* 665 F.2d 1066, 1068 n. 3 (D.C.Cir.1981); Restatement 2d, Conflict of Laws, §§ 6, 188, 193 (1971). Should Canadian law control, this Court would be placed in the position of predicting what theory of asbestosis liability will be adopted by the pertinent Canadian court. While this may be a familiar task for a federal court sitting in diversity, resort to the "general principles" of insurance law, as urged by plaintiff and suggested by the *Keene* court, cannot provide guidance when the circuits of the United States federal courts have failed to agree on appropriate "general principles."

Attention to the significant effect that these different interpretations may have upon the parties to asbestosis litigation will be of assistance in understanding why Canadian litigants are now appearing in a District of Columbia forum. When Brinco first filed its action in Canada against its insurers in 1979 there were as yet no dispositive rulings in the United States on the issue of what constitutes an asbestosis "injury" under relevant insurance provisions which would trigger coverage by the boilerplate language found in insurance con-

---

1. Note, *The Calculus of Insurer Liability in Asbestos-Related Disease Litigation: Manifesta-*  *tion + Injurious Exposure = Continuous Trigger,* 23 B.C.L.Rev. 1141, 1145 (1982).

tracts. The plaintiff in this case may have been motivated to bring suit against its insurers in a Canadian forum for reasons of jurisdiction, ease of execution for any judgment, or possibly the hope of a more favorable judicial climate in favor of a significant economic industry native to Canada.[2] The motives of plaintiff in instituting suit in Canada, however, are not properly before this Court and the Court has no need to speculate on plaintiff's purposes in that regard. Reflection on legal developments in the United States since plaintiff invoked Canada jurisdiction, however, does shed light on why plaintiff is now seeking this Court's jurisdiction. It is this light that the Court cannot ignore.

Since 1980, the federal courts in the United States have struggled to define the operative event for determining what constitutes an asbestosis "injury." Medical evidence demonstrates that there are three discrete stages in the development of asbestosis in an asbestosis victim. The first stage is simply that of exposure to the asbestos fibers contained in asbestos dust which causes the inhalation of the fibers into the victim's lungs. The second stage occurs when these microscopic fibers continue to invade and scar lung tissue while they are lodged within the respiratory tract of the victim. *Keene,* 667 F.2d at 1042. The third stage, which may occur as late as fifteen to twenty years after the initial inhalation, begins when the physiological symptoms of the disease manifest themselves in such a way as to be susceptible to clinical diagnosis. *See Keene,* 667 F.2d at 1040. Which of these stages comports with the definition of an "injury" for purposes of triggering coverage under liability insurance contracts has been the source of litigation in at least four federal circuits since 1980. Not surprisingly, each stage of the disease has found its supporters. The narrowest position, that coverage is triggered only when the disease "manifests" itself while the insurer is on the risk, has been endorsed by the First Circuit. *Eagle-Picher*

*Industries v. Liberty Mutual Insurance Co.,* 682 F.2d 12 (1st Cir.1982). A middle ground position has been taken by the Sixth and Fifth Circuits. *See Porter v. American Optical Corp.,* 641 F.2d 1128 (5th Cir.), *cert. denied,* 454 S.Ct. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Insurance Co. of North America v. Forty-Eight Insulations,* 633 F.2d 1212 (6th Cir.1980), *aff'd on rehearing,* 657 F.2d 814 (6th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). The position of these two circuits is that the "injury" which determines coverage is the *initial* inhalation of asbestos fiber by the asbestosis victim. As such, any insurer who was on the risk during a period of a victim's exposure to asbestos inhalation must assume the liability of defending and indemnifying the insured asbestos company. The third, and broadest, position is that taken by the D.C. Circuit in *Keene.* The D.C. Circuit has centered on the ongoing, internal assault on the integrity of lung tissue by the microscopic asbestos fibers as the critical factor for insurance coverage. As a logical corollary to this position, the D.C. Circuit has defined asbestos "injury" to include all three stages—from initial inhalation through internal scarring to the point at which the disease becomes susceptible to medical diagnosis. *Keene,* 667 F.2d at 1044–45. *See generally* Note, *The Calculus of Insurer Liability in Asbestos-Related Disease Litigation: Manifestation + Injurious Exposure = Continuous Trigger,* 23 B.C.L.Rev. 1141 (1982).

The dramatic consequences of the position taken by the *Keene* court have been quickly drawn to the fore by the facts of the present case. Under the *Keene* holding, any insurance company can be held liable for indemnification and defense merely by extending coverage during any part of the disease's development. Thus, in the present case, the one year long insurance policies issued by the defendant to the plaintiff can serve as a basis for holding the defendant jointly and severally liable for asbestos in-

---

**2.** In this regard the Court simply notes that the asbestos industry is confined to two countries, Canada and the Soviet Union.

juries for the entire twenty-three years of mining operations which predate the term of that policy. Unlike the position of the Sixth and Fifth Circuits requiring apportionment of both defense and indemnity responsibilities in proportion to the respective periods of coverage under the different insurance policies, *Porter v. American Optical Corp.*, 641 F.2d at 1145, application of the *Keene* holding to the present defendant would appear to force the defendant to stand and defend claims in numbers completely disproportionate to either parties' reasonable expectations at the time the one year contract was negotiated. Again, this Court does not intend to question the wisdom of the *Keene* decision. Rather, the Court simply doubts that the *Keene* court intended its decision to be a beacon for asbestosis litigants to divert pending litigation from other forums by offering a more attractive theory of liability in the District of Columbia.

## THE MOTION TO DISMISS

The defendant has sought to have the present case dismissed in favor of the prosecution of the pending Canadian consolidated case. In the alternative, the defendant has urged this Court to exercise its inherent powers, *Landis v. North America*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (Cardozo, J.), to stay this action pending the outcome of the Canadian litigation. In support of its motion the defendant has put forward two reasons for dismissing the current case. These two arguments will be addressed separately.

Before discussing the defendant's grounds for dismissing this action the Court should clarify what it views as the gravamen of plaintiff's suit.

At oral argument on this motion, counsel for the plaintiff did not attempt to conceal the two advantages that plaintiff hoped to obtain by his action in this forum. Apparently, not only is plaintiff attempting to invoke the fruits of the *Keene* decision as to liability but also seeks to capitalize on the relatively swift summary judgment procedures available under the federal rules. According to the affidavits submitted by Canadian counsel for both parties the Canadian courts have not adopted procedures similar to those found in Rule 56 of the Federal Rules of Civil Procedure. An additional dissimilarity is the fact that declaratory judgments as they have come to be used in the federal courts of the United States have no precise correlate in Canadian jurisprudence. Although it appears that Canadian courts have only endorsed the use of declaratory relief subsequent to the filing of plaintiff's Canadian cause of action, there remains some dispute as to the prospective effect of a declaratory judgment in Canadian courts.[3] *See Great West Steel Industries Ltd. v. Simco & Erie General Insurance Co.* [1979] 27 O.R. (2d) 379, 382–83. This Court, having viewed the high quality of Brinco's legal representation before this Court, finds it difficult to credit plaintiff's claim that "Brinco [brought this suit in Canada to seek legal defense in the United States] at a time when it did not appreciate the significant legitimate practical benefits that could be derived from litigating in this [District of Columbia] jurisdiction in terms of the saving of both time and expense by both parties." Brinco's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss, at 27. Instead, this Court believes that plaintiff has its eye on the costs and time associated with litigation not before this Court.

---

**3.** Counsel for both sides have addressed the issue of the prospective effect of a declaratory judgment issued by a Canadian court under Canadian law. Although this may relate to the adequacy of the remedies available to plaintiff in a Canadian forum this Court need only respond to this issue by noting that the precise effect of a declaratory judgment in the United States has not been conclusively resolved de-

spite a considerably greater length of exposure to declaratory proceedings by United States courts. *See Steffel v. Thompson,* 415 U.S. 452, 470, 94 S.Ct. 1209, 1221, 39 L.Ed.2d 505 (1974), (quoting opinion of Brennan, J., in *Perez v. Ledesma,* 401 U.S. 82 at 124–26, 91 S.Ct. 674 at 696–97, 27 L.Ed.2d 701); *id.* 415 U.S. at 477, 94 S.Ct. at 1224 (White, J., concurring).

This Court is of the view that the defendant has more accurately portrayed the reason why the plaintiff seeks to invoke this Court's jurisdiction. The legal costs associated with the defense of over 2,000 asbestosis cases covering all twenty-four years of plaintiff corporation's insured existence must indeed weigh heavy on the plaintiff's resources. The earlier that plaintiff obtains a judgment requiring any of the four insurance companies to assume these increasing defense costs the more likely is the plaintiff to remain solvent during the pendency of the Canadian proceedings. As plaintiff's counsel stated at oral argument, "the declaratory relief that we seek here would give us everything we want. It would give us a declaration that they must defend. That's what we need." Hearing Transcript at 13.[4]

Defendant has based its motion to dismiss on two separate grounds. The first is dismissal for plaintiff's failure to join indispensable parties under Rule 19 of the Federal Rules of Civil Procedure. The second argument put forward by defendant is a more general assertion directed at the inherent power of this Court to dismiss duplicative, inconvenient, or inefficient litigation where more satisfactory relief can readily be obtained elsewhere. While defendant's first argument cannot withstand passing scrutiny, the defendant's second claim must be accorded more serious attention.

Defendant Federal asserts that the three other insurance companies which are also defendants in the Canadian action are necessary parties to this action under Federal Rule of Civil Procedure 19(a). Defendant bases this contention on the fact that the insurance contract between plaintiff and defendant contains an "other insurance" provision. *See Evergreen Park N. & C. Home, Inc. v. American Eq. Assur. Co.,* 417 F.2d 1113 (7th Cir.1969). Under Rule 19(a), Federal must first show that these other insurers must be joined if feasible because either complete relief would not be available in their absence or these absent insurance companies possess an interest which may be prejudiced in their absence. Defendant, arguing that these other insurance companies should be joined in this action, claims that Rule 19(b) requires dismissal because two of the three other necessary insurance companies cannot be joined in this action for reasons of subject matter jurisdiction.[5] This Court, however, is in agreement with the plaintiff that the considerations required by Rule 19(b) are unnecessary because the defendant has not made out a sufficient showing of indispensability for invocation of Rule 19(a).

The presence of "other insurance" terms in the contested insurance contract does not automatically imply that a judgment by this Court will seriously impair or prejudice the interests of the absent insurance carriers. Each of Brinco's two insurance contracts with the defendant, one for primary and the other for excess liability, contains an "other insurance" clause. These clauses purport to restrict Federal's liability, both primarily and as an insurer of last resort, when Brinco has more than one policy covering a particular claim. Federal contends

---

4. In all likelihood, it would not be very long before, under any theory of asbestosis coverage, the ceiling of $1 million liability for indemnification contained in the primary insurance contract will be reached. After the liability coverage of the defendant has been exhausted the remaining duty of the defendant insurance company to defend the insured in the outstanding suits is subject to doubt. *Compare Lumberman's Mutual Casualty Co. v. McCarthy,* 90 N.H. 320, 8 A.2d 750 (1939) (no duty to defend after policy liability limits exhausted) *with Prince v. Universal Underwriters Ins. Co.,* 143 N.W.2d 708 (ND.1966) (duty to defend survives exhaustion of policy limits). More importantly, to the extent that local law is to serve as a guide in fashioning "general principles," the District of Columbia has already adopted the view that the duty to defend does not survive the exhaustion of insurance policy limits where the policy promises to defend "with respect to such insurance as is afforded by this policy." *National Union Ins. Co. v. Phoenix Assur. Co. of N.Y.,* 301 A.2d 222, 224 (D.C.App.1973).

5. Joinder of two of the three absent carriers would defeat diversity jurisdiction. Defendant Federal has yet to explain why it has not sought to implead the third insurance company, American Home Insurance Company, a diverse litigant.

that these "other insurance" clauses give the absent insurance companies a cognizable "interest" in the outcome of the case before this Court and thus requires joinder of those companies. While defendant's argument has some force when applied to the excess liability insurance policy (the "umbrella" policy),[6] it is considerably less persuasive when applied to Brinco's primary liability policy. It is principally under the primary liability policy that Brinco seeks recovery for not only past and future judgments but, more importantly, past and future defense costs.[7] Moreover, this Court need not run the risk of construing all "other insurance" clauses as bestowing indispensability on absent insurance carriers. The D.C. Circuit Court of Appeals in *Keene* could not have been more clear in its finding that the "doctrine of joint and several tort liability in this context is an accepted means of vindicating the rights of the tort victims." 667 F.2d at 1051. *See also Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 330, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955); *Stabilisierunssfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd.,* 647 F.2d 200, 207–08 (D.C.Cir.1981).

■ Under such a view, the plaintiff could select any one of the insurers to defend or indemnify the insured to the limits of their respective insurance contracts. *Keene,* 667 F.2d at 1051. The selected insurance company would have to seek contribution from other insurers in a subsequent suit. While this Court has not been directed to any Canadian law on this point, the Court is satisfied that the *Keene* court's finding of joint and several liability[8] governs this case for the limited purpose of determining the applicability of Rule 19(a) of the Federal Rules of Civil Procedure. While it is true that questions of joinder have been considered to be primarily procedural issues, *see Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 746 n. 22, 19 L.Ed.2d 936 (1968), and it is also true that issues of joinder involve a strong interest in maintaining an "independent system for administering justice," *Byrd v. Blue Ridge Rural Electric Co. v. New York,* 356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958), Canadian substantive law may be relevant to the joinder question before this Court. As Judge Wisdom has noted: "rules of joinder depend on the substantive rights and liabilities of the parties, present and absent. In diversity actions, these substantive rights and liabilities are creatures of state law." *Kuchenig v. California Co.,* 350 F.2d 551, 555–56 (5th Cir.1965), *cert. denied,* 382 U.S. 985, 86 S.Ct. 561, 15 L.Ed.2d 473 (1966). Although this Court can see little gain and conceivably some harm from applying foreign substantive law as a matter of governing state law to a joinder decision in a federal diversity case, foreign law may indeed determine the issue of "indispensability" in this case. For example, if Canadian law did not hold joint tortfeasors severally liable then as a matter of substantive "state" law the absent insurance companies would have a far greater interest in the outcome of this case. This Court, however, need not ascertain whether Canadian substantive law forces this Court to reach a conclusion different from that of the *Keene* court. The defendant has failed to bring any precedent to the Court's attention indicating that Canadian law would not hold the defendant severally liable in this case. *See* Fed.Rule Civ.P. 44.1. As such, the defendant has failed to meet his burden as the moving party to make out a claim of indispensability under Rule 19(a). Therefore, this Court finds that the other insurance carriers are not indispensable parties within the meaning of Rule 19(a).

---

**6.** *But see Keene,* 667 at 1051 ("The possibility of additional coverage can be determined consensually among insurers, or it can be adjudicated among insurers in a subsequent lawsuit.")

**7.** *But see National Union Insurance Company of Washington v. Phoenix Assurance Company of New York,* 301 A.2d 222, 224 (D.C.1973)

(liability for defense ends when liability limits reached under contract which provides for defense "for such insurance as is afforded by this policy").

**8.** The *Keene* court also sat in diversity but found it unnecessary to choose any particular body of state law. 667 F.2d at 1041 n. 10.

The second contention raised by the defendant in his motion to dismiss is a more general appeal to the discretion of the Court to stay or dismiss this action in favor of the pending consolidated suit in Ontario. The Court has not been furnished with any precedent by the defendant which precisely states the standard for dismissing a diversity case in favor of a suit in a foreign forum which has yet to come to judgment. This Court has no doubt of its inherent authority over its own docket. *See Landis v. North America Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (Cardozo, J.). Nevertheless, the Court is also aware of its limited discretion to decline to assume "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Construction Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The Supreme Court in *Colorado River Water Construction District,* however, did go on to list some factors which a court should weigh before dismissing a case because of a parallel suit in another forum. The *Colorado* Court offered factors such as the order in which jurisdiction was obtained in separate forums, the desirability of avoiding piecemeal litigation, and the inconvenience of the federal forum to the parties. *Colorado,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). More specifically, the *Colorado* Court stated: "No one factor is necessarily determinative; a careful considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado,* 424 U.S. at 818, 96 S.Ct. at 1246. In order to respond to the defendant's motion to dismiss this action in deference to the Canadian suit this Court has found it necessary to list and weigh the factors in the fashion suggested by the *Colorado* Court.

▮ Before identifying the factors that this Court must consider in deciding to retain jurisdiction or not, a preliminary problem must be answered. Counsel for either party has not informed the Court of any decisions which clearly state the appropriate degree of deference a federal court owes to proceedings in another country which have yet to reach judgment. This Court is of the view that the standard should be the same as that between two federal courts. This conclusion is supported by two facts in this case. The first fact is simply that the alternate forum is that of Canada, a country that shares the same common law roots as our jurisprudence. *Clarkson Co. Ltd. v. Shaheen,* 544 F.2d 624, 630 (2d Cir.1976); *Cornfield v. Investors Overseas, Ltd.,* 471 F.Supp. 1255 (E.D.N.Y. 1979); *Fleeger v. Clarkson Co., Ltd.,* 86 F.R.D. 388, 392–93 (N.D.Texas 1980). As the *Fleeger* court aptly stated:

> The rationale for comity dismissals is not based simply on lack of familiarity with the particular foreign law, but rather is in deference to the foreign country's legal, judicial, legislative and administrative system of handling disputes over which it has jurisdiction, in a spirit of international cooperation. . . . Certainly, if this Court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence.[9]

86 F.R.D. 388, 392–93. In this regard, the concerns that federalism normally presents for a diversity court are not implicated in this case.

The second fact which has persuaded the Court to apply the same deference to the Ontario proceedings as to another federal court is the fact that the plaintiff in this case is seeking to use this Court's jurisdiction to circumvent proceedings it instituted *in its own country.* The purpose behind the availability of alienage jurisdiction in diversity cases is not to shield foreign nationals from the law, either substantive or procedural, of their own country. Rather, the original purpose behind extending a federal forum to diverse foreign citizens was to protect foreign nationals from the possibility of unfair treatment in *state* tribunals when they confront state citizens. *See* 1

---

9. Indeed, this jurisdiction has enforced judgments of the Supreme Court of Ontario in the past. *Cherun v. Frishman,* 236 F.Supp. 292 (D.D.C.1964) (Tamm, J.).

Moore's Federal Practice, ¶ 0.75[1.–1], at 709.4 (1982 ed.). Regardless of the current vitality of this view of state courts, *see* H. Friendly, Federal Jurisdiction: A General View 147–48 (1973); Friendly, *The Historic Basis of Diversity Jurisdiction,* 41 Harv.L. Rev. 483, 495–97 (1928), the purpose behind extending access to federal forums by foreign nationals is not served under the facts of this case.

■ Having determined that the Court owes the same deference to the pending Canadian case as it would offer a pending federal case this Court must comply with the "general principle" set forth by the Supreme Court. "As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River Water Construction District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 U.S. 219, 221, 96 L.Ed. 200 (1952); *Steelman v. All Continent Corp.,* 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937)). Although concerns about duplicative litigation may by themselves provide sufficient cause for a federal court to refrain from assuming jurisdiction, the facts of this case present additional grounds for deferring to the ongoing Canadian proceeding.

The Court has attempted to isolate the respective criteria which should guide the use of its discretion. One factor, already alluded to above, is that the plaintiff has already chosen a Canadian forum. Thus, whatever merit there is in a first-to-file rule, *see Colorado River Water Construction District,* 424 U.S. at 818, 96 S.Ct. at 1246, it would certainly apply in this case to the plaintiff's detriment. As explained above, this action was filed some three years after plaintiff's initial Canadian suit and almost five months after the consolidated Canadian complaint.

Another consideration that this Court has addressed is the fact that the plaintiff has already taken positive steps to make sure that relief in Canada would be as complete and comprehensive as possible. The Court should not lightly speculate on the effect of a less comprehensive judgment by this Court on either Canadian law or the judgment of the Ontario Supreme Court in the pending consolidated case. Moreover, this Court would be reluctant to in any way impair the benefits of the plaintiff's three year endeavour to create a forum for a comprehensive disposition of its grievances.

A third factor which the Court must consider is the current state of progress in the Canadian action. "Where foreign litigation is in its incipiency, motions to stay the domestic action are properly denied." *I.J.A., Inc. v. Marine Holdings,* 524 F.Supp. 197, 199 (E.D.PA.1981). Counsel for both parties, and their Canadian counterparts, have traded charges of footdragging in the Canadian action. For example, plaintiff argues that the defendant only filed an answer to the consolidated Canadian complaint after proceedings were initiated in this Court. Defendant responds with a flurry of correspondence indicating that plaintiff repeatedly requested that the defendant delay filing an answer until after the four actions were consolidated. After evaluating all of the allegations of delay and undue prejudice resulting therefrom, the Court cannot find any indicia of bad faith on either side. If there has been any delay in the Canadian proceedings this Court is inclined to attribute it to normal maneuvering between adverse parties.

Apparently, at least three of Brinco's four insurance carriers have filed answers to the consolidated Canadian complaint. The only carrier which has yet to file an answer in the Canadian action is Royal Insurance Company. Royal Insurance Company is similar to defendant Federal in that it only insured the plaintiff for one year. Whether the plaintiff ever successfully receives an answer from this last Canadian defendant or whether the Canadian case can proceed without the defaulting insurance company, *cf. In Re Uranium Antitrust Litigation,* 617 F.2d 1248, 1257–58 (7th Cir. 1980), this Court has concluded that the Canadian proceedings have progressed be-

yond "incipiency." The two major insurers, whose combined policy coverage extends from 1952 to 1976 have been joined in the Canadian case. The length of time necessary to complete the Canadian proceedings was a proper concern for the plaintiff in 1979, or, at the latest, in 1981 when plaintiff moved to consolidate its claims. The expected completion date of the Canadian action or the absence of summary judgment proceedings in plaintiff's first forum are considerations which plaintiff has already had to weigh. This Court cannot be concerned if, in hindsight, the plaintiff would now have made a different choice.

Another factor that the Court must weigh is the relative convenience of proceedings in this forum as opposed to the Canadian court. Cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); Pain v. United Technologies Corp., 637 F.2d 775, 782 (D.C.Cir. 1981), cert. denied 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). There can be little dispute that the Canadian proceedings are more convenient to both parties. The primary witnesses, if necessary, and the requisite documentation can all be found in Canada.

Similarly, it should be more convenient for both parties to assert their claims and defenses in the same action with the other alleged defendants. Given the underlying reasons for this cause of action, however, the Court has attached little weight to defendant's claim of inconvenience stemming from the costs associated with proceedings on the same claim in two separate forums.

A further factor that this Court has considered is what prejudice may befall the plaintiff if this action is dismissed. Plaintiff can hardly argue that the Ontario Supreme Court, a court whose jurisdiction it invoked initially, will fail to afford substantial justice to plaintiff's claims. Indeed, there can be no doubt that the Canadian court is in a superior position to that of this Court to reach a just resolution of plaintiff's grievances. The defendant, on the other hand, faces the probability of inconsistent judgments, or, worse, an unenforce-able judgment by this Court over a small piece in the Canadian case.

The only possible prejudice that may result to the plaintiff's detriment is the possibility, speculative to be sure, that relief would be more certain and more swift in this forum. This Court cannot label this hypothetical advantage as prejudice. In the Court's view, the plaintiff is engaging in forum shopping. Judicial adversity to forum shopping has been a guiding principle in the exercise of judicial discretion by federal courts sitting in diversity cases since at least 1938. See Hanna v. Plummer, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965); Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As another court has said: "To bring an action in this district in the hope of obtaining a more favorable rule of law than now obtains in the district where the [plaintiff] first elected to sue is forum shopping with a vengeance." International Transportation Co., Inc. v. Sea-Land Services, Inc., 1969 A.M.C. 1676 (S.D.N.Y.) (quoted in Poseidon Schiffahrt v. M/S Netuno, 335 F.Supp. 684, 689 (S.D.Ga.1972), vacated, 474 F.2d 203 (5th Cir.1973)).

In conclusion, this Court has determined that it must dismiss this action in favor of the pending Canadian case. The reasons for this decision range from principles of international comity, Kenner Products v. Societe Fonciere Et Financiare, 532 F.Supp. 478, 479 (S.D.N.Y.1982), to a well-founded aversion to forum shopping on an international scale, cf. Poseidon Schiffahrt v. M/S Netuno, 335 F.Supp. 684, 687–89 (S.D.Ga. 1972), vacated, 474 F.2d 203 (5th Cir.1973). More importantly, this Court believes that a careful consideration of the factors which must guide the Court's discretion in determining whether to forge ahead in the face of the Canadian action can only lead to a dismissal of this action.

Despite this Court's decision that discretion requires dismissal of this case, the Court is genuinely concerned that the Canadian case be completed as expeditiously as possible. Although the Court does not doubt the good faith of the defendant in

vigorously pressing his defenses in the Canadian action, the Court would like to be sure that a complete resolution of the underlying disputes will be timely reached. Therefore, the Court will order the defendant to file an affidavit with both courts essentially repeating the representations that defendant has made in this action that it will continue to vigorously assert its defenses in the Canadian action. Further, the Court will order the defendant to file a copy of this Memorandum and Order with the appropriate Canadian court where the consolidated Canadian action is currently pending.[10] The tender of this opinion and order to the Canadian court should be reflected in the affidavit which defendant files in this Court. Wherefore, it is hereby this 2nd day of December, 1982,

ORDERED that the defendant shall file within fifteen (15) days from the date of this Order a copy of this Memorandum and Order with the court of the Ontario Supreme Court before which the consolidated case is currently pending, and it is

FURTHER ORDERED that within fifteen (15) days from the date of this Order the defendant shall file appropriate affidavits with this Court and the Canadian court retaining jurisdiction of plaintiff's consolidated claim stating that the defendant will continue to assert its defenses in the Canadian action in a timely manner, and it is

FURTHER ORDERED that upon submission to this Court by the defendant of an affidavit stating that it has complied with the previous two orders the motion of the defendant for dismissal of this case shall be granted with prejudice.

---

10. For the benefit of any Canadian court which may suffer the misfortune of reviewing this lengthy opinion, the Court would like to clarify the procedural posture of the present case. The decision of this Court constitutes a final decision within the meaning of 28 U.S.C. § 1291 (1976). Should plaintiff so desire, there are at least two possible stages of appellate review that plaintiff may seek should plaintiff appeal this Court's decision in a timely manner.