BLACK & DECKER CORP., Black & Decker, Inc., and Black & Decker (U.S.) Inc., Plaintiffs,

v.

SANYEI AMERICA CORPORATION, Defendant.

No. 86 C 5859.

United States District Court, N.D. Illinois, E.D.

Oct. 28, 1986.

William A. VanSanten, Wood, Dalton, Phillips, Mason & Rowe, Chicago, Ill., Don K. Harness and John A. Artz, Harness, Dickey & Pierce, Birmingham, Mich., for plaintiffs.

Ira Bodenstein and James S. Gordon, Chicago, Ill., Richard L. Huffman, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Defendant has petitioned this court for an order staying action in this proceeding pending the resolution of a nearly parallel action brought by plaintiffs in Hong Kong. In the alternative, defendant prays that plaintiffs be enjoined from prosecuting the foreign suit. Although argued, the defendant's other alternative motion, for transfer to the District of New Jersey, will not be considered herein as briefing was only ordered by the court on the first two questions.

### FACTS

The facts here are relatively undisputed. Defendant Sanyei America Corporation is a wholly owned subsidiary of Sanyei, a large

Japanese trading corporation. Sanyei also owns Sanyei Corporation (Hong Kong) Ltd. which, in turn, owns Sanyei Electric Co. (Sanyei Electric). Def. Mem. in Support of Stay at 4 (hereafter cited as Def. mem.). The portable eggbeater which lies at the heart of this infringement action, the defendant's "Handy Whisk," is "manufactured in Hong Kong by Sanyei Electric Company and sold in the United States by Sanyei America Corporation." Def. reply mem. at 1. It is undisputed that Handy Whisks are sold and distributed in other countries as well. Def. mem. at 2; Def. reply at 3.

Plaintiffs (hereafter collectively referred to as "B & D"), who market a similar cordless device under the name "Handy-Mixer," have instituted actions against the defendant in this court and Sanyei Electric in Hong Kong for infringement of intellectual property rights. This motion centers on defendant's contention that B & D seeks to "coerce" and "overwhelm" these "sister companies of a common Japanese parent" through duplicative actions and "litigative harassment." Def. reply at 1–3. In an effort to litigate in a single forum, defendant offers to submit to the jurisdiction of Hong Kong or have Sanyei Electric submit to the jurisdiction of this court. Def. reply at 2. "Indeed, defendant ... is willing to have the plaintiffs choose the forum they would prefer...." Def. reply at 2.

## DISCUSSION OF LEGAL ISSUES

■ However honorable these intentions, I cannot grant defendant's motions. This is a case where the concurrent jurisdiction of the American and Hong Kong forums is apparently uncontested. Given this, principles of sovereignty and comity must guide my actions here. As the Court of Appeals for the District of Columbia observed in *Laker Airways v. Sabena, Belgian World Airways*, 731 F.2d 909, 926–27 (D.C.Cir.1984):

> It is well settled that ... courts have power to control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign

jurisdictions. However, the fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in which one can be plead as res judicata. The mere filing of a suit in one forum does not cut off the pre-existing right of an independent forum to regulate matters subject to its prescriptive jurisdiction. For this reason, injunctions restraining litigants from proceeding in courts of independent countries are rarely issued.

*Id.*

■ In light of courts' general policy of restraint in such cases, and in the absence of any exceptional circumstances suggesting an irreparable miscarriage of justice, I will not enjoin the Hong Kong proceedings. As the *Laker* court reasoned, the "better view" of the law on this question is that the policies behind the parallel proceeding rule outweigh the expense caused by the duplication of parties and issues or the possibility of inconsistent adjudications. *Id.*, at 926–29. *See also Compagnie des Bauxites de Guinea v. Insurance Co. of North America*, 651 F.2d 877 (3rd Cir. 1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1312 (1982) (holding district court abused discretion in enjoining parties from litigating in courts of another sovereign despite a finding of duplicative, "and therefore harassing and vexatious" litigation.)

■ There is some indication that this circuit may not follow this "better view." In *Sperry Rand Corp. v. Sunbeam Corp.*, 285 F.2d 542, 544–45 (7th Cir.1960), the Court of Appeals dissolved an antisuit injunction in a trademark case, observing that "[w]e cannot agree that there is evidence to support a finding of vexatious or harassing litigation and must hold such a finding to be clearly erroneous." *Id.*, at 545. Because no such evidence has been presented here, defendant would not prevail under this more casual view of comity either.

Defendant's argument under *Sperry Rand* fails for a more fundamental reason as well. Before considering whether B & D's actions constitute harassment, the court must be persuaded of the identical nature of the two proceedings. As stated in the cases cited by defendant, "[t]he threshold question is whether the parties are the same in both actions, the issues are the same, and resolution of the first action will be dispositive of the action to be enjoined." *Cargill, Inc. v. Hartford Acc. & Indem. Co.*, 531 F.Supp. 710, 715 (D.Minn. 1982).

I am not convinced that this similarity of parties and issues exists. The parties are not, as defendant asserts, "identical for all practical purposes." Def. mem. at 17. While defendant markets and distributes Sanyei products in the United States, Sanyei Electric's market is admittedly broader. Assuming infringment, I believe B & D's recourse to dual litigation is necessary to minimize damage to its trademark and good will. Only suit against Sanyei Electric can stop that company from producing and distributing worldwide the infringing product. Absent evidence, defendant's suggestion that Sanyei Electric would not produce the Handy Whisk at all if it were barred from the American market is unpersuasive. At the same time, a suit in this country alone can prevent further distribution of the goods presently in defendant's possession or effect remedies regarding infringing goods that have already entered the stream of commerce.

Nor am I convinced that the issues in the two litigations are the same or that resolution of one action will be dispositive of the other. While it is true that the underlying facts are virtually identical and the relief sought is similar, Def. motion to stay, ex. 3, I cannot conclude that plaintiffs have filed simultaneous prosecutions of the same action. Unlike most cases upholding the use of antisuit injunctions, the dispute at bar does not arise from a contract and thus raise the specter of inconsistent interpretations of the same document. *See Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 855 (9th Cir.1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982) (approving injunction against foreign breach of contract action where antitrust implications of agreements were being litigated in the U.S.); *In Re Unterweser Reederei Gmbh*, 428 F.2d 888 (5th Cir.1970), *aff'd on rehearing en banc*, 446 F.2d 907 (1971), *rev'd on other grounds sub nom. Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (upholding the enjoining of parties from litigating in England a contractual claim already pleaded as a counterclaim in federal court); *Bethell v. Peace*, 441 F.2d 495 (5th Cir.1971) (parties to land-sale contract held invalid in Florida enjoined from quiet title suit in Bahamas).

Intellectual property issues, in contrast, involve separate and independent rights arising from the unique laws of each nation. Indeed, this is the crux of Judge Larson's ruling in *Medtronic, Inc. v. Catalyst*, 518 F.Supp. 946 (D.Minn.1981), *aff'd*, 664 F.2d 660 (8th Cir.1981), which defendant relies on in its brief. That case involved a promise by an owner of certain patents not to interfere with or restrain the promisee's use of specified technologies. When the patent owner sought injunctive relief for infringement in German and Canadian courts, the promisee moved for an antisuit injunction in the federal district court where the payee's patent invalidity claim was pending.

In granting the promisee's motion, Judge Larson noted that the question before him did not involve patents, but rather the interpretation of the parties' obligations under their agreement. Indeed, he specifically observed:

> Foreign patents, despite covering precisely the same product as an American patent, present separate and independent rights. American patent rulings thus have no effect in a foreign court examining the same product under the laws of that jurisdiction.

*Id.* at 955 (citations omitted). For the same reasons apparently, as the Court of Appeals for this circuit has stated, a United

States district court "may not adjudicate questions of foreign trademark rights even though the parties to such controversies might be properly before" the court. *Sperry Rand*, 285 F.2d at 544.

It is this refusal of either forum to adjudicate the meaning and scope of rights arising under the other's law that ultimately demolishes defendant's position here, despite its (and its sister corporation's) willingness to litigate in either forum. While the underlying facts may be the same, the legal rights involved, and the policies they are grounded on, may be substantially different in each jurisdiction. In a contract action, rights arise from the language of the agreement; in an intellectual property matter, substantive rights derive directly from the state rather than the parties themselves. Given this source of sponsorship, the interests of each state in articulating and enforcing its own laws should be respected. *Cf. Laker*, 731 F.2d at 937–45 (discussion of comity principles in context of application of U.S. antitrust laws.) An injunction respecting the Hong Kong proceedings, therefore, should not be granted.

■ These principles also suggest that this court should not stay the action in the United States, which is brought pursuant to federal trademark and copyright laws. "No foreign court can supersede the right and obligation of the United States courts to decide whether Congress has created a remedy for those injured by trade practices adversely affecting United States interests." *Id.*, at 935–36. Accordingly, I dismiss defendant's poorly argued, generally unsupported,[1] and legally incorrect abstention argument premised on *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hospital v. Mecury Construction*

*Corp*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Those cases, which observed that "only the clearest of justifications will warrant dismissal," explicitly involved parallel federal and state court actions drawing on a common source of law, not the courts and laws of different nations.

The issue which defendant attempted but failed to frame rests squarely on the Supreme Court's decision in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Plaintiff's failure to address the *forum non conveniens* factors discussed there is surprising given its apparent awareness of that opinion. *See* Def. mem. at 14 (citing *Piper* in context of § 1404(a) motions to transfer). Nor do the facts self-evidently support a *forum non conveniens* dismissal. Even if the private interest factors suggest a Hong Kong forum—a doubtful conclusion in light of defendant's own affidavits, *see supra* note 1—the public factors point strongly stateside. *See Piper*, 454 U.S. at 241, n. 6, 102 S.Ct. at 258, n. 6. The action here seeks relief from a United States court under United States law for trade damages incurred in the United States. Given this, as well as the United States citizenship of both of the defendants, I could not conclude that a jury of United States citizens would be unjustly burdened in hearing this matter. *Id.* Accordingly, I will not stay this action or abstain in favor of the Hong Kong proceedings.

### CONCLUSION

Because the defendant's motions have little or no basis in law or fact, they are denied.

---

1. Defendant has submitted affidavits to support its motions for stay of proceedings and change of venue. Taken together, these motions only bear on one factor respecting the convenience of place of trial, the location of documents and witnesses. The most specific of them, Huffman's affidavit in support of the motion for change of venue, suggests that abstention in

favor of the Hong Kong proceeding would be folly. According to that document, defendant presently intends to call eleven U.S. residents as witnesses and only five witnesses from Hong Kong. Once B & D's witnesses are included in the calculus, the convenience of an American forum appears overwhelming.