Diego J. HERBSTEIN, Plaintiff,

v.

Martin E. BRUETMAN, High Tech Medical Parks Development Corp., Ronald Tash, Douglas Kiell, Mauricio Agudelo, and Alta Tecnologia Medica, S.A., Defendants.

No. 89 Civ. 6864 (RWS).

United States District Court,
S.D. New York.

July 11, 1990.

Summit Rovins & Feldesman, New York City, for plaintiff; Ronald E. DePetris, Marion Bachrach, Seth F. Kaufman, of counsel.

Sperling, Slater & Spitz, Chicago, Ill., for defendants; Stephen J. Spitz, Gregg R. Hague, of counsel.

## OPINION

SWEET, District Judge.

Defendants Dr. Martin Bruetman ("Bruetman"), Ronald Tash ("Tash"), Mauricio Agudelo ("Agudelo"), High Tech Medical Parks Development Corporation ("High Tech"), Douglas Kiell ("Kiell"), and Alta Tecnologia Medica S.A. ("Altec") (collectively, the "Bruetman defendants") have moved to dismiss plaintiff Dr. Diego Herbstein's ("Herbstein") case on the grounds of comity or forum non conveniens, or alternatively, to stay the case until similar proceedings in Argentina are resolved. For the reasons set forth below, the motions are denied.

*Parties*

Plaintiff Herbstein is a physician, originally from Argentina but currently a permanent United States resident domiciled in New York. Herbstein is an officer, director, and 50% shareholder in Imagenes Por Computacion ("IxC"). He is also listed as a director and 8% shareholder of Altec.

Defendant Bruetman is a physician, originally from Argentina but now a citizen of Illinois. Bruetman is the other 50% shareholder in IxC, and he serves as IxC's President and Chairman of the Board. Bruetman also indirectly holds a controlling interest in, and serves as the Director for, Altec.

Defendant Tash is a citizen of Illinois and is a 12.25% shareholder in High Tech. Tash also serves as the Secretary and legal counsel for High Tech.

Defendant Agudelo is a citizen of Illinois, and serves as the controller for High Tech.

Defendant High Tech is an Illinois corporation with its principal place of business in Illinois. High Tech specializes in the scientific and technical advising of medical establishments. It also owns 49% of Altec stock.

Defendant Kiell is a citizen of Connecticut, and at all relevant times, he owns 12.25% of High Tech stock. Until January 1989, he was the President and Chief Financial Officer of High Tech.

Defendant Altec is an Argentine corporation with functions similar to High Tech's.

*Prior Proceedings*

In 1989, Herbstein initiated a civil suit in Argentina against Bruetman and Amerigo Pescio ("Pescio") seeking: (1) to remove Bruetman as director of IxC; (2) to remove Pescio as executive manager of IxC; (3) to declare that Bruetman and Pescio wrongfully carried out their duties for IxC; (4) to petition the Argentine court to assign a provisional administrator for IxC; and (5) to petition the Argentine court to maintain the status quo on IxC's corporate relations with the Guemes Foundation (an Argentine non-profit corporation affiliated with the Guemes Hospital).[1]

On August 22, 1989, the lower court in Argentina denied Herbstein's motions, reasoning *inter alia*, that IxC's by-laws should govern the internal affairs of the corporation. Then on September 28, 1989, the Argentine appeals court suspended IxC's board and granted Herbstein's request for a provisional administrator. However, the appeals court refused to accept Herbstein as a "victim" of the alleged wrongdoing, so that he was found not personally eligible to recover damages if wrongdoing was eventually discovered.[2] In view of these measures, the court found the petition to retain the status quo unnecessary.

At approximately the same time Herbstein instituted the above action, Bruetman brought a second Argentine suit, a civil/criminal suit on behalf of himself and IxC, requesting an investigation of several people, including Herbstein, to determine their responsibility in IxC's "accounting irregularities." Bruetman sought the status of victim, but the Argentine appeals court also refused his request. The Argentine appeals court held that Bruetman's individual suit was not proper, but that IxC had a legitimate interest in the investigation. Shortly thereafter, Bruetman filed a criminal slander suit against Herbstein. In addition, High Tech filed a complaint against IxC seeking compensatory damages for breach of contract.

Herbstein filed the present suit on October 16, 1989. The Bruetman defendants filed this motion on January 17, 1990, oral argument was heard on April 27, 1990 and the motion was considered fully submitted on that date.

---

1. Herbstein's Argentine complaint and the holdings of the Argentine courts below come from the defendants' translations of those documents, as Herbstein has not submitted his own.

2. Argentine law allows people to collect compensatory damages only if they qualify as a "victim," which is narrowly defined. Because the allegations made by Herbstein related to corporate affairs, IxC qualified as a victim under the law, but Herbstein did not, as the alleged misappropriation of corporate funds did not affect him personally.

*Facts*

In late 1986 or early 1987, Herbstein and Bruetman began discussing the possibility of investing in a sophisticated medical diagnostic center to be established in Buenos Aires, Argentina. According to Bruetman's proposal, the center would provide its services to the Guemes Hospital in Buenos Aires. Herbstein and Bruetman thereafter negotiated, by both mail and telephone, the details of the business venture. The parties dispute whether Bruetman met Herbstein in New York to discuss the transaction.

In April 1987, Herbstein began sending payments to Bruetman through the mail or through wire transfers to begin establishing the proposed company. Herbstein also claims to have given Bruetman cash in New York to be used for the venture. By June 1987, Alta Tecnologia Medica S.A. ("Altec–1") was incorporated in Argentina. Bruetman became the President, Chief Executive Officer, and Chairman of the Board. Herbstein became Vice President; both men were equal owners of the company.

By July 1987, Herbstein's payments to Altec–1 totalled approximately $447,000,[3] part of which was paid directly to Altec–1's bank account in Argentina. According to Herbstein, these funds were intended as a capital contribution to the business, in exchange for which Herbstein was to be given 50% of Altec–1's stock.

By August 1987, Altec–1 had entered into an agreement with the Guemes Foundation to import, install, and operate medical equipment purchased from Philips Export B.V. ("Philips"). In exchange for Altec–1's services, it would receive a portion of the revenue generated from the use of the machines.

However, by late 1987, Herbstein alleges that he discovered that Bruetman through Altec–1 was conducting business unrelated to the Guemes Hospital services. These other transactions apparently benefitted Bruetman and High Tech. Consequently,

Herbstein and Bruetman agreed to reform the corporation: Altec–1 was re-named Imagenes Por Computacion ("IxC"), and Bruetman formed a new business venture which was also named Alta Tecnologia Medica S.A. (hereinafter "Altec"). High Tech owned 49% of Altec stock; Bruetman's son Carlos held 43%, and Herbstein held 8%.

Herbstein has now lodged several claims with this court against different combinations of defendants. The claims are both complicated and detailed, and at this stage of the proceedings, it is not necessary to examine the facts of all of his claims in depth.

Herbstein alleges that Bruetman fraudulently represented in New York that all money transferred by Herbstein would be used to fund Altec–1 operations. The funds, according to Herbstein, were used to benefit Bruetman and High Tech. Moreover, Herbstein alleges that when IxC was formed, Bruetman promised Herbstein in New York that he would be credited with all his capital contributions to Altec–1. Herbstein claims that he has not been fully credited for all his contributions. Herbstein also alleges that several defendants, or combinations of defendants, sent letters to him in New York which misrepresented both IxC's financial status and Herbstein's obligations to Altec and High Tech.

I. *Comity*

The Supreme Court has defined comity as:

> the recognition which one nation allows within its Territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895).

■ The general rule of comity is that the domestic court should exercise jurisdic-

---

**3.** All money amounts referred to in this opinion are either in dollar amounts, or in the dollar equivalent of the payment made in Argentine australes (the national currency), at the exchange rate existing at the time of payment.

tion concurrently with the foreign court. *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987); *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir. 1984). If a judgment is reached first in the foreign court, it can then be pled as *res judicata* in the domestic court. *See China Trade,* at 36. Without a final judgment from another court, surrender of jurisdiction is justified only under exceptional circumstances. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983).

■ The Argentine courts have not reached a final decision that can be pled as *res judicata* here. The Argentine proceedings are in their preliminary stages: a provisional administrator has been appointed and an investigation into possible misappropriation is now underway. There has not yet been any determination of actual wrongdoing by any of the defendants named in either the Argentine or American complaints. Consequently, this court may not properly dismiss Herbstein's complaint of wrongdoing absent a showing of exceptional circumstances not shown here.

■ Moreover, comity requires that the parties and issues in both litigations are the same or sufficiently similar, such that the doctrine of *res judicata* can be asserted. *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d at 36; *Black & Decker Corp. v. Sanyei Am. Corp.,* 650 F.Supp. 406, 409 (N.D.Ill.1986). Here, neither the parties nor the issues are identical or significantly similar.

Herbstein's Argentine complaint named Bruetman and Pescio for alleged misappropriation of corporate funds. By contrast, the American complaint names Bruetman, Tash, Kiell, High Tech, Altec, and Agudelo as defendants. Moreover, the instant complaint does not deal specifically with the alleged misappropriation but alleges that the Bruetman defendants fraudulently induced Herbstein to invest in the Argentine ventures. The complaint describes the alleged misappropriation in detail only to highlight that the funds allegedly were not being used for the purposes the Bruetman defendants represented to Herbstein. In essence, then, the Argentine proceeding is equivalent to a shareholder derivative suit, while the American proceeding is a claim for misrepresentation—two independent causes of action. In the Argentine suit the corporation stands to gain and Herbstein perhaps only derivatively. In the present suit, it is Herbstein individually who seeks restitution for an alleged wrongdoing.

Finally, the Bruetman defendants incorrectly assert that *Brinco Mining Ltd. v. Federal Insurance Co.,* 552 F.Supp. 1233 (D.C.1982), controls the instant case. The *Brinco* Court based its decision to dismiss on two primary factors: (1) desire to avoid duplicative litigation, and (2) the "first to file" rule. *Id.* at 1241.

■ As explained above, Herbstein's action does not replicate his Argentine litigation, and each case incorporates different alleged wrongdoings. Moreover, while Herbstein did file first in Argentina, he did so on an independent legal basis. Herbstein acted so that both he and IxC would qualify as "victims" of the alleged *misappropriation.* There has not been *any* Argentine filing of a charge of *misrepresentation,* and therefore the "first to file" rule does not apply. *See id.* at 1241. Herbstein did reserve his rights to seek compensatory damages for Bruetman's alleged wrongdoings merely to prevent the statute of limitations from expiring in Argentina. It was a "prudent" measure to ensure that Herbstein would be able to recover some damages in the event that his planned suit in the United States was dismissed on procedural grounds. Such prudential filings cannot provide the basis for a finding of "duplicative litigation." *Department of Economic Dev. v. Arthur Andersen & Co.,* 683 F.Supp. 1463, 1485 (S.D.N.Y.1988). Defendants' motion for dismissal on the grounds of comity is therefore denied.

## II. *Forum Non Conveniens*

■ The plaintiff's choice of forum should only be disturbed if the balance of factors strongly favors the defendants.

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In fact, a district court should dismiss on a *forum non conveniens* ground only where a trial in the United States would be "unjust, oppressive, or vexatious" and not merely inconvenient for the defendant. *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947); *American Home Assur. Co. v. Insurance Corp. of Ireland, Ltd.,* 603 F.Supp. 636, 640 (S.D. N.Y.1984).

 The Court in *Gulf Oil* set out both the private and public interest factors to consider in a *forum non conveniens* motion. The private factors include: the relative ease of access to sources of proof, the availability of compulsory process for unwilling witnesses, the cost of obtaining attendance for willing witnesses, and other practical problems that could make the trial protracted, difficult, or costly (e.g., application of foreign law, translation of documents), 330 U.S. at 508, 67 S.Ct. at 843. The public interest factors include: the administrative difficulties resulting from a backlog of litigation in the district, and the imposition of jury duty on a district having no relation to the litigation. 330 U.S. at 508–09, 67 S.Ct. at 843.

 The private interest factors weigh in favor of Herbstein. As an officer, director, and 50% shareholder, Herbstein can obtain the relevant corporate documents from IxG. Moreover, since Herbstein alleges misrepresentation in the United States through mail and wire fraud, most of the documents are in fact already in Herbstein's possession in the United States. In addition, the misrepresentation allegedly occurred in New York, most of the witnesses relevant to establishing Herbstein's allegation of misrepresentation will also be located in New York or in the United States, where they are subject to compulsory service of process. Only one

of the defendants is from Argentina and most of the actions constituting the alleged misrepresentation occurred at least partly in the United States. Moreover, the Bruetman defendants have not indicated that any of the likely Argentine witnesses would not be willing to testify in the United States.

The practical problems with respect to a trial in this district are the possible need for translations of Argentine documents, and the possible application of Argentine law to parts of the litigation. Some of the Argentine documents relevant to his complaint here deal with the alleged transfer of funds to unauthorized corporations or individuals. However, the translation required for this trial would not be so overwhelming as to justify dismissal of the case.

Furthermore, defendants' inconvenience argument is unpersuasive. The Bruetman defendants, with one exception, are Illinois residents. It will be equally difficult for the Argentine court to obtain translated evidence/testimony from English-speaking Tash, Kiell, and Agudelo, who will undoubtedly be called as witnesses in the Argentine proceedings. *See Carlenstolpe v. Merck & Co.,* 638 F.Supp. 901, 907 (S.D. N.Y.1986).

 Even if this court decides that it must apply Argentine law to the claims, this choice of law alone cannot support a *forum non conveniens* dismissal where the other factors weigh in favor of the plaintiff's choice of forum. *Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1123 (S.D.N.Y.1982).

 The public interest factors also weigh in Herbstein's favor. A case may not be dismissed simply because New York is a congested center for litigation, and defendants made no showing that New York is prohibitively congested.[4] Moreover, the United States courts have a definite relation to the litigation, when a fraud allegedly is perpetrated against one of its residents. The United States has a definite interest in correcting wrongs committed on its soil, and in deterring similar actions by other individuals and corporations. The

---

**4.** By contrast, Herbstein has shown that congestion in the Argentine judicial system has led to cases lasting for decades. *See, e.g., Mozzatti,*

300 Fallos 1102 (1978) (cases dismissed after 25 years of litigation without a judgment).

Argentine forum is not convenient nor is litigation in this forum unjust or oppressive so as to merit dismissal on a *forum non conveniens* ground.

III. *Motion to Stay*

■■■ "[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to dismiss or stay ... it presumably concludes that the parallel ... litigation will be an adequate vehicle for the complete resolution of the issues between the parties."

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. at 28, 103 S.Ct. at 943; *Ingersoll Milling Machine Co. v. Granger*, 833 F.2d 680, 683–86 (7th Cir.1987) (trial court properly denied stay motion where parallel proceedings underway in Belgium; stay properly granted later only because judgment in Belgian case found to adjudicate all rights between parties). The Argentine litigation, for the reasons stated above, will not provide complete resolution of the issues underlying the instant complaint.

■■■ Furthermore, where a foreign litigation is still in its preliminary stages, motions to stay must be denied. *I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F.Supp. 197, 199 (E.D.Pa.1981). This is especially required where the claims and parties are not identical, since the plaintiff will merely reinstate those additional claims after obtaining a judgment in the foreign case. *I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F.Supp. at 199. Herbstein's action against Bruetman and Pescio is still in its earliest stages and the Argentine legal system has not concluded its investigation of the alleged misappropriations. Moreover, if a stay were granted, Herbstein would be forced merely to wait to pursue those claims that differ from those asserted in Argentina.

Accordingly, the Bruetman defendants' motion for dismissal or stay is denied. Settle order on notice.

It is so ordered.