In the Matter of the Complaint of Plaintiff MARITIMA ARAGUA, S.A., as owner and operator of the M/V MAR CORAL for exoneration from or limitation of liability,

PETROQUIMICA DE VENEZUELA, S.A., et al., Plaintiffs,

v.

M/T TRADE RESOLVE, et al., Defendants.

VETCO GRAY, et al., Plaintiffs,

v.

M/T TRADE RESOLVE, et al., Defendants.

FMC CORPORATION, et al., Plaintiffs,

v.

M/T TRADE RESOLVE, et al., Defendants.

BAROID DRILLING FLUIDS, INC., et al., Plaintiffs,

v.

M/T TRADE RESOLVE, et al., Defendants.

VARISUR C.A., INC., et al., Plaintiffs,

v.

M/T TRADE RESOLVE, et al., Defendants.

Nos. 91 Civ. 8161 (RWS), 92 Civ. 5936 (RWS), 92 Civ. 7979 (RWS), 92 Civ. 7980 (RWS), 92 Civ. 8019 (RWS) and 92 Civ. 8020 (RWS).

United States District Court, S.D. New York.

May 25, 1993.

As Amended June 16, 1993.

Varet Marcus & Fink, New York City (Stanley McDermott, III, of counsel), for Plaintiff Petroquimica de Venezuela, S.A.

Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City (Robert E. Daley, Sanford E. Balick, Richard J. Feinson, of counsel), for Baroid Claimants.

Halley, Calkins & Avallone, New York City (Steven P. Calkins, of counsel), for Flota Petrolera Ecuatoriana.

Freehill Hogan & Mahar, New York City (Eric Lenck, of counsel), for Maritima Aragua, S.A.

Watson Farley & Williams, New York City (Alfred E. Yudes, of counsel), for claimants in the Limitation Proceeding.

Connell Losquadro & Zerbo, New York City (Raymond A. Connell, of counsel), for Bingham–Bigotte & Company.

Poles, Tublin, Patestides & Stratakis, New York City (Melvin J. Tublin, William J. Brady, III, of counsel), for defendants.

SWEET, District Judge.

## OPINION

Certain defendants in these consolidated proceedings, all parties with interests in the ship M/V Trade Resolve, have moved for an order dismissing actions against them on the grounds of *forum non conveniens*. For the following reasons, the motion is denied.

### The Collision

On August 7, 1991, at approximately 3 a.m., the M.V. Mar Coral (the "Mar Coral") and the M.T. Trade Resolve (the "Trade Resolve") collided in Lake Maracaibo in Venezuela (the "Collision"). The Mar Coral was carrying a cargo of machinery parts loaded at the Port of Houston, Texas to Maracaibo, Venezuela. The Trade Resolve was carrying a cargo of oil from Venezuela to Port Sandino, Nicaragua. Both vessels were piloted by Venezuelan pilots; the crew of the Mar Coral was Venezuelan and the crew of the Trade Resolve was composed of Greeks, Maldiveans, Russians, Pakistanis and one Filipino. The Mar Coral was subsequently run aground by Venezuelan tugs to avoid sinking, and, after salvage, at least some of the cargo on the Mar Coral was saved.

### The Parties

Maritima Aragua S.A., a Venezuelan corporation ("Maritima Aragua") is the owner and operator of the Mar Coral, a vessel registered in La Guaira, Venezuela.

Transport Hellenic, Inc., a Panamanian corporation with its principal place of business in Greece ("Transport Hellenic") is the registered owner of the Trade Resolve, a vessel registered under the flag of Panama. The Trade Resolve was managed and operated by Trade Management Services, Inc. ("TMS"), a Panamian holding corporation with its principal place of business in Greece, until December 11, 1991 (some four months after the accident which gave rise to this litigation) when management of the Trade Resolve was transferred to Marine Management Services M.C., Brokerage and Management Services M.C., Brokerage and Management Corp. ("Brokerage"), a New York Corporation. The plaintiffs allege they did not name TMS initially as a defendant because it is a shell or shelf corporation with no assets. The Plaintiffs allege that Transport Hellenic, Trade and Transport Inc. [Greece], and Trade and Transport [U.K.] Ltd. ("Trade and Transport") (collectively, the "Trade Resolve Defendants") are all companies related through ownership by Gregory Callimanopulos, a well-known Greek shipowner.

Petroquimica de Venezuela S.A. ("Petroquimica") and Allianz Versicherungs–A.G. ("Allianz") are foreign corporations who al-

lege cargo losses and damages to cargo which Petroquimica shipped on the Mar Coral and insured with Allianz. Allianz maintains it is subrogated to certain rights of Petroquimica through payment of the insurance.

Baroid Drilling Fluids, Inc., Baroid de Venezuela, S.A., FMC Corp., FMC Wellhead de Venezuela, Vairsur C.A., Fluidos de Perforacion C.A., Vetco Gray and Vetco Gray de Venezuela, C.A., (each a United States or Venezuelan corporation and collectively the "Baroid Claimants") allege they shipped cargo on the Mar Coral which was lost due to the negligence of the Trade Resolve defendants.

The owners of the remaining cargo on the Mar Coral are the Bariven, S.A., Maraven, S.A., Lagoven, S.A. and Pequiven, S.A., all wholly owned but independent subsidiaries of Petroleos de Venezuela, S.A. (the "PDVSA Claimants").

### Prior Proceedings

The PDVSA Claimants attached the Trade Resolve in Maracaibo, Venezuela in August 1991, immediately after the collision. The PDVSA Claimants reached an agreement with the owners of the Trade Resolve at that time in the form of a Liverpool and London Steamship Protection and Indemnity Association Limited Letter of Undertaking dated August 22, 1991 (the "Letter of Undertaking"). The Letter of Undertaking specified that the parties would litigate all their claims in London, in part for consideration for $5 million security provided to them by the underwriters of the Trade Resolve.

Later in 1991, the underwriters (both of whom are headquartered in London) of the Trade Resolve and the Mar Coral agreed to have the Admiralty Court, Queens Bench division of the Royal Courts of Justice determine the proportionate liability or comparative fault between the two vessels for the Collision (the "London Action.") The London Action began in September 1991. The two vessel owners and their underwriters are the only parties to the London Action.

Maritima Aragua, in its capacity as owner of the Mar Coral, filed a complaint in the Southern District of New York on December 4, 1991, for exoneration from and limitation of liability against claims arising from the Collision under the Limitation of Liability Act, 46 U.S.C.App. § 183 (the "Limitation Proceeding"). Various claimants, including certain of the Baroid Claimants, filed claims in the Limitation Proceeding in excess of $20,000,000. The Plaintiffs allege, however, that Maritima Aragua did not notify all potential claimants of the Limitation Proceeding, although it knew that all parties who alleged a cargo loss from the Mar Coral qualified as claimants. The Limitation Action is not subject to the present motion to dismiss.

On August 6, 1992, Petroquimica and Allianz filed an action for cargo loss and damage against the Trade Resolve Defendants. (Petroquimica also filed a claim against Maritima Aragua in the Limitation Proceeding.)

Between October 30 and December 7, 1992, four more complaints were filed in the Southern District of New York by the Baroid Claimants against the Trade Resolve Defendants for cargo losses caused by negligence and breach of duty on the part of the crew of the Trade Resolve. The Plaintiffs in those four actions seek to hold the Trade Resolve defendants liable for the essentially same allegations of breach of duty, negligence, and unseaworthiness first brought by Petroquimica and its insurer Allianz. On December 22, 1992, the Baroid claimants filed an additional complaint making the same allegations of negligence against TMS. By agreement between the judges pursuant to Rule 15 of the Local Rules of the Southern District for the division of business among district judges, all cases related to this one filed in the Southern District were assigned to this Court. A stipulation of February 11, 1993, consolidated the Limitation Proceeding and all Cargo Proceedings.

The Baroid Claimants attached the Trade Resolve upon her arrival in New Orleans on April 2, 1993, and both the Baroid Claimants and the PDVSA Claimants filed an action against the Trade Resolve in the Eastern District of Louisiana before the Honorable Edith Brown Clement (93 Civ. 1105). The PDVSA Claimants have moved in that court with respect to the validity of the forum

selection clause in the Letter of Undertaking. The Trade Resolve Defendants have also moved in that court to dismiss for *forum non conveniens* pursuant to the forum selection clause. The Baroid claimants have also moved to transfer the New Orleans action to this court.

The proceedings in this motion date back to November 11, 1992, when the Trade Resolve Defendants moved to dismiss this action on jurisdictional and *forum non conveniens* grounds. The Baroid Claimants cross-moved for leave to take discovery on December 7, 1992. Oral argument was heard on December 9, 1992, and this Court granted the Baroid Plaintiffs the right to jurisdictional discovery. During the pendency of this motion, the Baroid Claimants, joined by the PDVSA Claimants, attached the Trade Resolve when it docked in New Orleans, and commenced an *in rem* action described above against the vessel and its owner, Transport Hellenic, Inc.

The Trade Resolve Defendants then moved for an order pursuant to Rules 15(a) and 26(c)(1), F.R.Civ.P., to amend their answers to Plaintiffs' complaint to withdraw defenses in prior answers based upon lack of personal jurisdiction, lack of subject matter jurisdiction and improper service of process, and to file an amended motion to dismiss for *forum non conveniens*, which motion was granted at oral argument heard on May 5, 1993. Both sides submitted supplemental briefs on the issue of *forum non conveniens* on May 13 and on May 21, and the motion to dismiss was deemed fully submitted as of that latter date.

### Discussion

#### Forum Non Conveniens

■ The Trade Resolve Defendants urge that either Venezuela, where the accident occurred, or London, where the owners and underwriters of the two ships have agreed to have their relative liability adjudicated by the Queen's Bench, would be a more appropriate forum for these claims.

■ The doctrine of *forum non conveniens* has traditionally enabled a district court to dismiss an action in order to transfer it to a more convenient forum when venue in

that court is proper, *see Canada Malting Co. v. Paterson S.S., Ltd.*, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932) (action in admiralty between two Canadian interests dismissed in favor of Canadian forum, despite tort in American waters). But a district court should dismiss on a *forum non conveniens* ground only where trial in the United States would be unjust or oppressive, and not merely inconvenient for the defendants. *Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947); *Herbstein v. Bruetman*, 743 F.Supp. 184, 189 (S.D.N.Y.1990) (Sweet, D.J.).

The Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947) listed both private and public interest factors which should be taken into account to decide whether or not to transfer an action. The private interest factors, which affect the convenience of the litigants themselves, include:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive . . . . .

*Accord, Borden, Inc. v. Meiji Milk Products Co.*, 919 F.2d 822, 827–28 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991); *Blanco v. Inversiones Eufrates, S.A.*, 997 F.2d 974 (2d Cir.1993). The public interest factors bearing on the question include administrative burden on the court, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign laws, and the interest in having the trial in a forum that is at home with the law that must govern the action. *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843. If these factors suggest dismissal, the court must then determine whether there exists an adequate alternative forum for this dispute. The analysis of the Court in *Gilbert* was adopted by the Second Circuit in *Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880, 882 (2d Cir.1978) and explicitly held to

apply to admiralty actions in *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147 (2d Cir.1980) (*en banc*), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1981).

### Private Factors

Among the private factors, the ease of access of proof, the availability of witnesses, the cost of transporting the witnesses, and other practical problems do not clearly point to a different forum. "The central focus of the *forum non conveniens* inquiry is convenience," *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981).

The crucial factor in the case at bar is the presence of the Limitation Proceeding brought by the owners of the Mar Coral here in New York, and which is not subject to— and would not be affected by—a successful motion to transfer the claims against the Trade Resolve Defendants to either London or Venezuela. The relevant witnesses, documents, translations, and other evidence will be litigated in this district regardless, and this factor tilts the balance of convenience in favor of this forum.

However, the Trade Resolve Defendant's claims for transfer must still be analyzed under the private and public interest factors test of *Gilbert.* If the Limitation Action in New York and the Trade Resolve Defendant's action in London were not proceeding, the balance of private interest factors would probably favor Venezuela, although the scattered nature of the evidence does not overwhelmingly favor any one forum. The collision occurred in Venezuelan waters and certain of the witnesses—the crew on the Mar Coral, the pilots on the tugboats, the captain of the port who investigated the accident, and some of the local pilots on the Trade Resolve—are presumed to be in Venezuela. Much of the evidence concerning the collision is also in Venezuela, especially the report that resulted from local investigations of the accident.

The disparate nationalities of the Trade Resolve's captain and crew (Greek, Filipino, Russian, Pakistani, and Maldivean) do not tilt in favor of any particular forum. The location of documents in the possession of the Trade Resolve Defendants is already the subject of dispute, but documents are transportable, as has already been demonstrated in this case. The documents and witnesses on the issue of liability do not indicate that this case should be transferred to a foreign forum.

Moreover, the availability of evidence and witnesses on other issues, especially on the issue of damages, does not justify transfer. Witnesses and documents for the value of the cargo loaded at Houston will be in this country. The German insurer, Allianz, will likely produce evidence of its damages from Germany. While London may be a more convenient forum for Allianz, Allianz has no greater rights than its Venezuelan insured. Evidence in the possession of Allianz, accordingly, may or will be used by the Venezuelan corporation Petroquimica. Given its Greek and British offices, London would be a convenient place for the Trade Resolve Defendants, but (given their offices in this country) so would New York. In short, the evidence and witnesses to be produced by the U.S. corporations, combined with the possibility of evidence to be produced from Germany, England, or Greece, prevent the convenience of witnesses and the location of the evidence from being as determinative of the appropriate forum as it was in *In re Union Carbide Corp. Gas Plant Disaster,* 809 F.2d 195, 201 (2d Cir.1987) *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987), ("the vast majority of material witnesses and documentary proof bearing on causation of and liability for the accident is located in India, not the United States.") Although the cost of translations is a relevant concern, *Schertenleib v. Traum,* 589 F.2d 1156, 1165 (2d Cir.1978); *Monsanto Int'l. Sales Co. v. Hanjin Container Lines, Ltd.,* 770 F.Supp. 832, 836 (S.D.N.Y.1991), translations will be required in any case for the Limitation Proceeding. The weight of the evidence, in terms of witnesses and documents, tilts toward Venezuela but not overwhelmingly and by itself does not justify transfer to any one particular forum.

The availability of compulsory process does not justify transfer either. Since the owners of the Venezuelan Mar Coral have com-

menced their Limitation Action in this forum, and since the Baroid Claimants have filed their Cargo Claims here, both have already judged that it is likely that the Venezuelan witnesses necessary for that proceeding will be willing to testify in New York. The Trade Resolve Defendants argue that since the pilot and the Pilot Association are not amenable to suit here in New York, keeping the case here prejudices the defendants. However, the Defendants have also argued for removal to England, where, presumably, the pilot and the pilot's association are not amenable to process either. While compulsory process for any witnesses in Greece, Germany, or London is unavailable to this court, transferring the case to London does not solve the problem of compulsory process from the other nations, and creates new problems of witnesses unwilling to travel from Venezuela or the United States.

Other practical problems do not justify transfer. The Trade Resolve Defendants allege that a transfer to Venezuela would allow for easier access to the scene of the collision. It is hard to see what advantages accrue to easier access to the scene of the collision, given that neither party has alleged that the accident was caused by natural obstacles. The salvage of the Mar Coral can be shown through eyewitness testimony and documentary evidence, and, for the reasons stated above, such evidence is not sufficient to transfer this action.

In short, the private interests of the litigants, given the witnesses and the proof to be produced in the New York for the Limitations Proceedings, does not weigh in the favor of transfer. Under the analysis in *Gilbert*, the interests of the public do not weigh in favor of transfer either.

### Public Factors

The public interest factors in the *Gilbert* analysis balance the interests of the various possible fora and the problems posed by choice of law. *Gilbert* simply holds that if only one jurisdiction has real interest in the conflict, it is as much a burden to allow proceedings in any other jurisdiction as it is a disservice to interfere with legitimate interests by transferring the case out of its proper district.

The relevant public interests factors in this case include the administrative convenience of the New York court. The United States courts have a definite relation to this litigation, since the loss is borne by domestic U.S. companies. *Herbstein v. Bruetman*, 743 F.Supp. 184, 189 (S.D.N.Y.1990). Keeping the case here, on balance, serves the factors of judicial economy and convenience which are also implicated in the *forum non conveniens* arguments: none of the parties have moved to dismiss the Limitation Proceeding still pending before this court, although it arises out of the same collision and involves substantially the same parties. Since the Mar Coral Limitation Proceeding will stay in New York, and will involve certain of the issues in the action against the Trade Resolve Defendants, judicial economy speaks in favor of the forum where all parties are present—New York.

The Trade Resolve Defendants have alleged that they have a forum-selection clause designating London in the Letter of Undertaking with the PDVSA Claimants, alleged to be the owners of the majority, if not all, of the rest of the cargo originally loaded on the Mar Coral and lost as a result of the Collision. The Baroid Claimants have submitted an affidavit signed by the Venezuelan lawyer who approved the Letter of Undertaking, Alejandro Gomez, who states that he is an in-house lawyer for only one of the PDVSA subsidiaries, the Maraven, S.A., and that the two parties never saw, let alone reached, the agreement which the Trade Resolve Defendants maintain is reflected in the Letter of Undertaking: "[i]t is a remarkable proposition for the Defendants to suggest that this etherial LOU … should now serve as [the Trade Resolve Defendants'] one-way ticket to London."

This dispute over the existence of the Letter of Undertaking has no bearing upon this Court's opinion, for even a valid forum-selection clause in the document will not affect the direct action of the Limitation Proceeding. Since the forum selection clause, which governs only the claims against the Trade Resolve, has no effect upon any claims filed by

the PDVSA Claimants against the Mar Coral in the Limitation Action before this court, it therefore should be disregarded in the balancing of interests under *Gulf Oil.* If the Limitation Action were not already proceeding in this Court, such a forum-selection clause would have an effect upon concerns of judicial efficiency. But as the case stands, both the Baroid Claimants and the Trade Resolve Defendants may be fighting on two fronts, unless a truce is obtained on one.

The interests of each forum in the outcome of the litigation are also be taken into account under the *Gilberts* test. In the case at bar, Venezuela has a legitimate interest in regulating its own shipping traffic. However, there is no reason to believe those interests will not be respected in the course of the Limitation Proceeding, which is already before this Court and is not the subject of any motion to transfer.

The remaining public interest factors enunciated by *Gilbert* concern choice of law. The Baroid Claimants argue that U.S. law will be implicated to at least some degree, since they allege that the bulk of the cargo claims are also subject to the U.S. Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.* The choice of the law governing the tort claims, however, poses the real problem. Under the factors used to determine the law applicable to an admiralty cause of action under *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), at least four of the seven relevant factors favor Venezuelan law—the place of the wrongful act, the law of the flag, the allegiance of the injured party, and the availability of a Venezuelan forum. The allegiance, flag, and base of operations of the Trade Resolve favor Panama or Greece. "[I]n the absence of some overriding domestic policy translated into law, the rights to recover for a tort depends upon and is measured by the law of the place where the tort occurred. *Black Diamond S.S. Corp. v. Robert Stuart & Sons,* 336 U.S. 386, 396, 69 S.Ct. 622, 627, 93 L.Ed. 754 (1949). However, choice of law is only one factor out of many under the *Gilberts* test, and the Trade Resolve Defendants have not shown why it

would be impossible for a U.S. Court to apply Venezuelan law to the proceedings before it. "[T]he need to apply foreign law is not alone sufficient to dismiss under the doctrine of *forum non conveniens*", *R. Maganlal & Co. v. M.G. Chemical Co.,* 942 F.2d 164, 169 (2d Cir.1991). "We must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform," *Manu Int'l, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 67–68 (2d Cir.1981); *Cruz v. Maritime Company of the Philippines,* 702 F.2d 47, 48 (2d Cir.1983).

The Baroid Claimants maintain that the Trade Resolve Defendants wish to transfer the case to London for an entirely different reason:

> It is submitted that this ... is but a thinly veiled ploy to find a safe haven in the guise of England's proportionate fault statute. The Baroid claimants are informed that the laws of Venezuela, like those of the United States, provide for joint and several liability on the part of vessels involved in a collision. Thus, if the Trade Resolve Interests were deemed to share any percent of the fault for the collision, the Mar Coral cargo claimants could obtain a full recovery against the Trade Resolve for the damages sustained.

Pl.Mem. at 11.

The prospect of a lower recovery under a different law of the forum will not prevent a dismissal. Even though the English tort law of strict proportional liability may be less favorable to the Baroid claimants than either the Venezuelan or American tort rule of joint and several liability, the possibility of a change in substantive law should not be given conclusive weight. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247, 102 S.Ct. 252, 261, 70 L.Ed.2d 419 (1981) (decision to dismiss wrongful death action despite differences under Scottish tort law not abuse of discretion). The Court in *Piper* did state:

> We do not hold that the possibility of an unfavorable change in law should *never* be a relevant consideration in a *forum non conveniens* inquiry.... if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all,

such a dismissal would not be in the interests of justice. *Piper,* 454 U.S. at 254, 102 S.Ct. at 265. In this case, however, there are no allegations that the remedies provided by the English court would amount to no recovery at all, nor that the differences in law are inherently unfair aside from the prospect of a lesser ground for recovery. *See Carnivale Cruise Lines v. Shute,* 499 U.S. 585, ——, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991). This is an ancient doctrine:

> Nor do we stop to inquire which law does whom the greater or the lesser good. The argument is misaddressed.... "In cases such as that now in judgement, we administer the public law of nations, and are not at liberty to inquire what is for the particular advantage or disadvantage of our own or another country."

*Lauritzen v. Larsen,* 345 U.S. 571, 593 & n. 29, 73 S.Ct. 921, 934 & n. 29, 97 L.Ed. 1254 *quoting The Peterhoff,* 72 U.S. (5 Wall.) 28, 57, 18 L.Ed. 564 (1866).

The balance of factors weighs against transfer. If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable. *Piper,* 454 U.S. at 249–50, 102 S.Ct. at 263. Although certain of the factors enumerated in *Gulf Oil* and in *Piper* recommend transfer, factors of at least equal weight do not.

### Plaintiff's Choice of Forum

■ Since the balance of convenience tilts in favor of retaining the action, there is no need for the Court to determine whether there exists an alternative forum for this dispute, or to decide whether Venezuela is too strife-torn to permit a just resolution of the dispute, as the Plaintiffs claim. Here, the traditional presumption in favor of a plaintiff's choice of forum should control. *Zangiacomi v. Saunders,* 714 F.Supp. 658, 660 (S.D.N.Y.1989); *Ayers v. Arabian American Oil Co.,* 571 F.Supp. 707, 708 (S.D.N.Y. 1983); *Zorn v. Anderson,* 263 F.Supp. 745, 749 (S.D.N.Y.1966). Although an American citizen does not enjoy an absolute right to sue in an American Court, *see Alcoa Steamship Co., Inc. v. M/V Nordic Regent,* 453 F.Supp. 10, 13 (S.D.N.Y.1978), *aff'd,* 654 F.2d

147 (1981) (*en banc*), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1981), this presumption is "fully justified" when the plaintiff is a resident or citizen of the United States. *Piper,* 454 U.S. at 255, 102 S.Ct. at 265. The Baroid Claimants' cargoes were all loaded in the United States and almost all involved shipments from U.S. companies to their South American affiliates and subsidiaries. Although some of the plaintiffs are Venezuelan, this does not change the analysis: when a treaty with a foreign nation accords its national access to our courts equivalent to that provided American citizens, identical *forum non conveniens* standards must be applied to such national by American Courts. *Blanco v. Inversiones Eufrates, S.A.,* 997 F.2d 974 (2d Cir.1993). Because such a treaty exists between the United States and Venezuela, *see* Treaty of Peace, Friendship, Navigation and Commerce, Jan. 20, 1836, U.S.–Venez., art. 13, 8 Stat. 466, 472, no discount may be imposed upon the initial choice of a New York forum solely because certain of the plaintiffs are Venezuelan corporations.

■ Although a plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him the expense or trouble not necessary to his own right to pursue his remedy, the plaintiff's choice of forum should not be disturbed unless the balance of factors weighs strongly in favor of the defendant. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). This balance "must be even stronger when the plaintiff is an American citizen and the alternative forum is a foreign one." *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir.1972).

Given the presumption that a U.S. citizen's or resident's choice of forum is entitled to deference by this court, the balance of both private and public interest factors under *Gulf Oil* suggests that this Court should retain jurisdiction over the cargo claims as long as the Limitation Action filed by the Martimia, S.A., is before this Court. The claims and evidence required for the Limitation Proceedings are simply too substantially similar to justify transfer of the interests to London

or Venezuela. Under the circumstances, there is no need for this Court to determine whether or not Venezuela or London would present an adequate alternative forum.

### The Motion for A Stay of Discovery is Denied

The Trade Resolve Defendants have also moved for an order staying discovery pursuant to Rule 26(c), F.R.Civ.P., which authorizes a court to stay discovery where such may be an undue burden. Since the Defendants have made no such showing, the stay of discovery requested by the defendants is likewise denied.

### Conclusion

For the foregoing reasons, the Trade Resolve Defendants' motion to dismiss for *forum non conveniens* and to stay discovery is denied.

It is so ordered.