847 F.Supp. 1177 (1994)
In the Matter of the Complaint of Plaintiff MARITIMA ARAGUA, S.A., as owner and operator of the M/V MAR CORAL for exoneration from or limitation of liability,
PETROQUIMICA DE VENEZUELA, S.A., et al., Plaintiffs,
v.
M/T TRADE RESOLVE, et al., Defendants.
Vetco GRAY, et al., Plaintiffs,
v.
M/T TRADE RESOLVE, et al., Defendants.
FMC CORPORATION, et al., Plaintiffs,
v.
M/T TRADE RESOLVE, et al., Defendants.
BAROID DRILLING FLUIDS, INC., et al., Plaintiffs,
v.
M/T TRADE RESOLVE, et al., Defendants.
VARISUR C.A., INC., et al., Plaintiffs,
v.
M/T TRADE RESOLVE, et al., Defendants.
Nos. 91 Civ. 8161 (RWS), 92 Civ. 5936 (RWS), 92 Civ. 7980 (RWS), 92 Civ. 7979 (RWS), 92 Civ. 8019 (RWS) and 92 Civ. 8020 (RWS).
United States District Court, S.D. New York.
April 5, 1994.
*1178 Hill Rivkins Loesberg O'Brien Mulroy & Hayden (Sanford E. Balick, Raymond P. Hayden, Robert E. Daley, Richard J. Feinson, of counsel), New York City, for Baroid claimants.
Watson Farley & Williams (Alfred E. Yudes, Christopher P. Belisle, of counsel), New York City, for claimants in the limitation proceeding.
Rogers & Wells (William Brady, III, of counsel), New York City, for Trade Resolve defendants.

OPINION
SWEET, District Judge.
Defendants the vessel M/T TRADE RESOLVE (the "TRADE RESOLVE"), Transport Hellenic Inc., Marine Management Services M.C., Brokerage & Management Corp., Trade & Transport Inc. [Greece], Trade & Transport [U.K.] Ltd., and Trade Management Services, Inc. (collectively, the "TRADE RESOLVE Defendants" or "Movants") have moved for an order, pursuant to Canons 4, 5, and 9 of the New York Code of Professional Responsibility and the ethical jurisprudence of this Court and of the State of New York, disqualifying the law firms of Watson Farley & Williams ("WFW") and Hill Rivkins Loesberg O'Brien Mulroy & Hayden ("Hill Rivkins") from further representing the plaintiffs and claimants in certain actions pending before this court. For the following reasons, this motion is denied.

Parties
The parties, facts, and prior proceedings in this matter were fully discussed in a prior opinion of this Court, familiarity with which is assumed. See In re Complaint of Maritima Aragua, S.A., 823 F.Supp. 143 (S.D.N.Y. 1993). They will be described below only to the extent necessary to decide the present motion.
The law firm of WFW, with offices at 380 Madison Avenue, New York, New York, is part of a Jersey Island partnership ("WFW Jersey"). The partners of the affiliated firm of WFW, with offices at 15 Appold Street, London ("WFW UK") are also members of WFW Jersey, but the New York partners of WFW Jersey are not members of WFW UK. Hill Rivkins is a law firm with offices at 21 West Street in New York City.
Maritima Aragua S.A. ("Maritima"), a Venezuelan corporation is the owner and operator of the M/V MAR CORAL (the "MAR CORAL," and together with Maritima, the "MAR CORAL Plaintiffs"), a vessel registered in La Guaira, Venezuela.
Transport Hellenic, Inc., a Panamanian corporation with its principal place of business in Greece, is the registered owner of the TRADE RESOLVE, a vessel registered under the flag of Panama. The TRADE RESOLVE was managed and operated by Trade Management Services, Inc., a Panamanian holding corporation with its principal place of business in Greece, until December 11, 1991, when management of the TRADE RESOLVE was transferred to Marine Management *1179 Services M.C., Brokerage and Management Corp., a New York Corporation.
Allegations have been made that the TRADE RESOLVE Defendants are related through ownership by Gregory Callimanopulos ("Callimanopulos"), a well-known Greek shipowner.

Facts and Prior Proceedings
The underlying action in this matter involves the collision the MAR CORAL and the TRADE RESOLVE in Lake Maracaibo in Venezuela (the "Collision"). In addition to damage to the involved ships, the collision allegedly caused damage to a pipeline owned by Maraven S.A. ("Maraven").
In December 1991, the MAR CORAL Plaintiffs submitted a complaint for Exoneration from or Limitation of Liability in this Court seeking limitation of liability arising from the collision (the "MAR CORAL Limitation Proceeding"). In January, 1992, the New York office of WFW Jersey, with the law firm of Liddel, Sapp, Zivley, Hill & LaBoon L.L.P. of counsel, filed an Answer and Claim in the MAR CORAL Limitation Proceeding on behalf of Bariven S.A., Maraven, Pequiven S.A., Lagoven S.A., Clover Systems, Inc. d/b/a Clover Systems Intermodal, Baroid Drilling Fluids, Inc., Varisure C.A., Inc., and FMC Wellhead de Venezuela (collectively, the "MAR CORAL Claimants").
On August 4, 1993, Hill Rivkins filed a complaint (the "TRADE RESOLVE Litigation") on behalf of Bariven Corp., Bariven S.A., Maraven, Lagoven S.A., and Pequiven S.A. (collectively, the "TRADE RESOLVE Plaintiffs") against the TRADE RESOLVE Defendants. The complaint submitted by Hill Rivkins in the TRADE RESOLVE Litigation contains four paragraphs drafted by WFW Jersey concerning Maraven's pipeline damage claim.
Several actions concerning the collision, including the MAR CORAL Limitation Proceeding and the TRADE RESOLVE Litigation ultimately were consolidated before this Court. The Court denied the TRADE RESOLVE Defendants' motions to dismiss for forum non conveniens and to stay discovery on May 25, 1993. See In re Complaint of Maritima Aragua, S.A., 823 F.Supp. 143 (S.D.N.Y.1993).
Argument was heard on the present motions on February 9, 1994. Additional submissions were received from the parties until February 23, 1994, on which date the motion was considered fully submitted.

Discussion

Standard for Disqualification
The Code of Professional Responsibility (the "Code"), as promulgated by the American Bar Association, has been adopted by the New York State Bar Association as its own code of ethics. N.Y. Judiciary L. Appendix. The Code is recognized in this Circuit as prescribing appropriate guidelines for the professional conduct of the bar. NCK Org. Ltd. v. Bregman, 542 F.2d 128, 129 n. 2 (2d Cir.1976).
Canon 4 states that a "[l]awyer should preserve the confidences and secrets of a client." Canon 5 states that "[a] lawyer should exercise independent professional judgment on behalf of a client." Disciplinary Rule 5-108 provides that "[e]xcept with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not ... [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Canon 9 states that "[a] lawyer should avoid even the appearance of professional impropriety." N.Y. Judiciary L. Appendix.
Motions to disqualify opposing counsel are viewed with disfavor in this Circuit. Clark v. Bank of New York, 801 F.Supp. 1182, 1197 (S.D.N.Y.1992); United States Football League v. National Football League, 605 F.Supp. 1448, 1452 (S.D.N.Y. 1985) (collecting cases). The principle reason for this is that disqualification of counsel impinges on parties' rights to employ the counsel of their choice. Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir.1983). "The Court of Appeals [for the Second Circuit] has cautioned that motions to disqualify counsel ... can inflict serious harm on the party whose lawyer is disqualified ... `for in disqualification matters we must be solicitous of *1180 a client's right freely to choose his counsel....'" Ullrich v. Hearst Corp., 809 F.Supp. 229, 236 (S.D.N.Y.1992) (quoting Evans, 715 F.2d at 791).
Courts require parties seeking disqualification of counsel to meet a high standard of proof before disqualification may be granted. Evans, 715 F.2d at 791; Kubin v. Miller, 801 F.Supp. 1101, 1112 (S.D.N.Y. 1992); In re E. & S. Dists. Asbestos Litig., 133 F.R.D. 425, 429 (E.D.N.Y.1990); Football League, 605 F.Supp. at 1453.
All parties to the present action agree that a party seeking disqualification must prove that the moving party is a former client of an adverse party's counsel; that there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present suit; and that the adverse party's counsel had access to relevant privileged information. Football League, 605 F.Supp. at 1452; Clark, 801 F.Supp. at 1197.
"Mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion" except in unusual circumstances. Football League, 605 F.Supp. at 1452; New York Inst. of Tech. v. Biosound, Inc., 658 F.Supp. 759, 761 (S.D.N.Y.1987). Courts "are reluctant to rest disqualification of counsel solely upon Canon 9. Instead, courts generally require proof that another Canon has been violated." Hartford Accident & Indem. Co. v. RJR Nabisco, Inc., 721 F.Supp. 534, 538 (S.D.N.Y. 1989) (citations omitted).

Former Client
The TRADE RESOLVE Defendants allege that:
During the period 1989 to December 1992, the Watson Farley law firm represented Mr. Callimanopulos and certain entities with which he is or was affiliated or associated. The subject matter of that representation included advice on the manner in which Mr. Callimanopulos' holdings, interests, and activities in various jurisdictions around the world, both directly and through companies with which he had an affiliation or association, could and should be structured in light of questions concerning legal responsibilities and liabilities.
(Baldwin Aff. ¶ 17.)
The TRADE RESOLVE Defendants have submitted redacted invoices from WFW U.K. to Trade & Transport and Brokerage & Management, both of which are TRADE RESOLVE Defendants. Mr. Baldwin, the in-house counsel for defendant Brokerage & Management Corp. and counsel to Mr. Callimanopulos, asserts that, in connection with WFW's previous engagement, he and Callimanopulos imparted confidences and secrets to Mr. Preston of WFW U.K. concerning Callimanopulos' business interests. (Id. ¶ 18.) Preston confirms that he did work for Brokerage & Management, during which employment he met with Callimanopulos and received confidential information as to the ownership of certain Callimanopulos interests. (Preston Aff. ¶¶ 6-7).
In addition, Baldwin alleges that in the Spring and Summer of 1991, he met with partners from the New York office of WFW Jersey to discuss the implications of the Oil Pollution Act of 1990 and certain taxation matters for companies associated with Callimanopulos. Although these discussions apparently did not result in the retention of WFW Jersey by Baldwin or those associated with him, Baldwin claims that the discussions included an explanation of the various entities that compose the TRADE RESOLVE Defendants, and that this information constituted client confidences and client secrets as those terms are used in the Code of Professional Responsibility. (Baldwin Rep.Aff. ¶¶ 3-5.) Mr. Van Vooren, the Chief Financial Officer of Brokerage & Management Corporation, who was present at the meetings among Baldwin and the WFW attorneys, claims that these same issues were discussed at a meeting among Baldwin, himself, and Mr. Betts of WFW at a meeting on January 20, 1992. (Van Vooren Aff. ¶ 3).
Mr. Yudes of WFW Jersey (NY) concedes that WFW attorneys met with Baldwin and his associates, but claims that WFW provided only generic information relevant to the Oil Pollution Act of 1990, citizenship, and United States taxes. (Yudes Aff. ¶ 24).
*1181 In June 1992, Baldwin and Van Vooren apparently met with Mr. Preston of WFW U.K. and Mr. Betts of WFW Jersey's New York offices in the New York office of Brokerage & Management Corp. to discuss the possibility of retaining WFW for further projects involving various companies related to Callimanopulos. (Baldwin Further Aff. ¶ 7; Betts Aff. ¶ 7.)
These facts confirm that certain of the TRADE RESOLVE Defendants, particularly Brokerage & Management Corp. and Trade & Transport, were prior clients of WFW Jersey. ABA Formal Opinion 84-351 (Oct. 20, 1984) concluded that a law firm does not violate the ABA Model Rules of Professional Conduct and the ABA Model Code of Professional Responsibility by listing another law firm on its letterhead as an "associated" or "affiliated" firm as long as the law firms adhere to the applicable rules regulating disclosure of confidential information and conflicts of interest as if they were a single firm. The Opinion noted that there is a trend for lawyers and firms to practice in multiple states, and that this is often not done as a single firm with multiple offices, but through the structure of "affiliated" or "associated" firms.
With regard to the confidentiality that must be maintained between "affiliated" or "associated" firms, the Opinion notes that potential clients are led to believe that lawyers of the "affiliated" or "associated" firm will not simultaneously represent persons whose interests conflict with the client's interests. The opinion goes on to state that "[w]hen a firm elects to affiliate or associate another with it and to communicate that fact to the public and clients, there is no practical distinction between the relationship of affiliates under that arrangement and the relationship of separate offices in a law firm."
The partners of WFW U.K. are partners of WFW Jersey, although the partners of the New York office of WFW Jersey are not partners of WFW U.K. Both Yudes and Preston admit that WFW U.K. and WFW Jersey are, at a minimum, affiliated partnerships. (Preston Aff. ¶¶ 1-2; Yudes Aff. ¶ 2.) WFW U.K.'s prior representation of Trade & Transport and Brokerage & Management, therefore, must be considered representation by WFW Jersey.
As a general rule, when one member of a firm has obtained confidences through the representation of a client, courts will presume that the confidences were transmitted within the firm to other attorneys. United States Football League v. National Football League, 605 F.Supp. 1448, 1466 (S.D.N.Y.1985). In Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311 (7th Cir.1978), the Seventh Circuit considered an appeal from a denial of a motion to disqualify a large law firm with offices in several cities. Work for one client was done by the firm's Chicago office, while representation of an interest allegedly adverse to this client was performed by the firm's Washington office.
The Seventh Circuit found that the district court had abused its discretion in applying a different imputation of knowledge principal in the case of a large law firm from that traditionally applied to smaller firms. Westinghouse, 580 F.2d at 1318. The court held that the large size of the firm would, in fact, encourage clients to divulge confidential information, and that there was no basis for creating separate disqualification for large firms. Westinghouse, 580 F.2d at 1321.
In this case since WFW U.K. represented Callimanopulos' interests in the past, these interests must be treated as prior clients of WFW Jersey, including its New York office.
In addition, both parties agree that members of both WFW U.K. and the New York office of WFW Jersey met jointly with representatives of Callimanopulos' interests to discuss other possible representations, but that ultimately the New York office of WFW Jersey was not retained. "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." Bennett Silvershein Assocs. v. Furman, 776 F.Supp. 800, 803 (S.D.N.Y.1991) (quoting Westinghouse, 580 F.2d at 1319). In Bennett, this Court found that an attorney-client relationship was formed for purposes of disqualification analysis when a movant, *1182 ten years previously, had met one time with an attorney, did not retain him, and never had another contact with him.
In the present case it would be reasonable for the Callimanopulos representatives to assume that, in meeting with the attorneys from WFW Jersey (NY), they were meeting with individuals who were obligated to respect their confidences, if any were in fact disclosed.
The Movants have suggested a separate ground for disqualification of Hill Rivkins through its prior representation of a company allegedly related to Callimanopulos, Pegasus Petroleum Ltd., and/or Pegasus Petroleum Corporation ("Pegasus"). (Baldwin Further Aff. at ¶ 11.) Baldwin asserts that Hill Rivkins attorneys Sanford E. Balick, Patrick V. Martin, and others worked for Pegasus and thereby obtained confidential information. (Baldwin Further Aff. ¶¶ 12-13; Baldwin Supp. Aff. ¶ 4.)

Relationship between Representations and Access to Relevant Information
The movants must show that there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present suit and that the adverse party's counsel had access to relevant privileged information.
With regard to Hill Rivkins' possible prior representation of Pegasus, the TRADE RESOLVE Defendants face a heightened burden to show that representation of a party that is not a defendant but is rather a company allegedly related to a defendant is grounds for disqualification. See Hartford Accident & Indem., 721 F.Supp. at 539. They rely chiefly on Don King Productions, Inc. v. Harlow, 1988 WL 112896 (S.D.N.Y. Oct. 18, 1988), to help them meet this burden.
In Don King, the entities that the challenged law firm previously represented had the right to designate two of the defendants' five directors. They were also limited partners with a fifteen percent interest in one of the defendants. These facts indicated that the prior client's interests were affected by the suit, and they therefore had the right to prevent the use of confidences given to their prior attorneys in the present litigation, even though they themselves were not parties.
The Movants state only that "Pegasus Petroleum and/or Pegasus Petroleum Ltd. is part of the `Callimanopulos Group of Companies.'" No information is supplied regarding the relationship between Pegasus and any of the TRADE RESOLVE Defendants, or how Pegasus' interests could be affected by the present litigation. Although they assert that Hill Rivkins gained access to confidential information in the course of this representation, they have not met their burden of showing how this information was relevant to the present action. These assertions fall far below the showing required to disqualify an attorney that allegedly represented, not a present defendant, but a defendant's related entity.
Neither have the Movants satisfied their burden of demonstrating that WFW's previous representation of Callimanopulos' interests was "substantially related" to the present matters.
The "substantial relation" test is strictly applied in this Circuit, and requires the moving party to demonstrate that the relationship between the two actions is "patently clear" or that the actions are "identical" or "essentially the same." Bennett, 776 F.Supp. at 803 (quoting Government of India v. Cook Indus., Inc., 569 F.2d 737, 740 (2d Cir.1978); Clark, 801 F.Supp. at 1198.
While Preston of WFW U.K. acknowledges that he previously advised Baldwin of Brokerage & Management Corp, he claims that this was completely unrelated to the present action. In addition, in the New York meetings among Baldwin and various WFW attorneys, WFW asserts that only general matters related to the Oil Pollution Act of 1990, citizenship, and taxes were imparted, and that they obtained no confidential information relating to the TRADE RESOLVE Defendants at this meetings. Overall, WFW asserts that none of its prior representations were related to the present action, and that it has no confidential information related to the TRADE RESOLVE Defendants or the instant action.
*1183 The Movants have failed to meet their high burden of proof that either the prior representation of Callimanopulos interests by WFW U.K., or the conversations between WFW attorneys and Callimanopulos' representatives in New York were substantially related to the present action or that WFW or Hill Rivkins had access to relevant privileged information. Cf. Clark, 801 F.Supp. at 1198 (representation in unrelated transactions insufficient for disqualification of counsel). This motion is, therefore, denied without prejudice to a new motion for disqualification as additional information becomes available.

Conclusion
For the reasons stated above, the motion to disqualify WFW and Hill Rivkins from representing plaintiffs and claimants in these consolidated actions is denied.
It is so ordered.