INSURANCE CORPORATION OF HANNOVER, INC., an Illinois Corporation, Plaintiff,

Robinson, Brog, Leinwald, Reich, Genovese and Gluck, P.C., Intervenor,

and

Milledge, Iden & Held, Intervenor,

v.

LATINO AMERICANA de REASEGUROS, S.A., a Panamanian Corporation, Defendant.

Citibank, N.A., as Trustee for the Latino Americana de Reaseguros, S.A., Defendant Counterclaimant,

and

Chase Manhattan Bank, N.A., Defendant.

NATIONAL COMMISSION FOR REINSURANCE, as Administrator of Latino Americana de Reaseguros, S.A., Counterclaim Defendant and Third–Party Plaintiff,

v.

Salvatore R. CURIALE, as Superintendent of Insurance of the State of New York, Third–Party Defendant.

No. 90 Civ. 7734 (RWS).

United States District Court, S.D. New York.

Oct. 7, 1994.

Richard A. Martin, Werbel McMillin & Carnelutti, New York City, for Ins. Corp. of Hannover, Inc.

Arthur Z. Schwartz, Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, P.C., New York City, for Milledge, Iden & Held.

Daniel F. Gaven, Palmieri, Gaven & Soberman, New York City, Joseph P. Cillo, Cillo & Lucas, Tampa, FL, Michael E. Gorelick, Abrams & Martin, P.C., New York City, for Latino Americana de Reaseguros, S.A.

Rebecca W. Knowles, New York City, for Citibank, N.A.

John K. Shannon, Jr., Townley & Updike, New York City, for Banco Cafetero, S.A.

Marcie S. Mintz, Robert Abrams, Atty. Gen. for N.Y., New York City, for Salvatore R. Curiale.

## *OPINION*

SWEET, District Judge.

A swirl of motions have been made arising out of the affairs of the defendant Latino Americana de Reaseguros, S.A. ("LARSA") and its reorganization, including motions for intervention, the enforcement of an obligation, attorneys' liens, and a judgment, the discharge of the interpleading bank, and summary judgment to obtain various relief. The motions for intervention, and for discharge of interpleader will be granted. The motions to enforce attorneys' liens and the judgment will be denied, as will the motion for a stay. The reasons for this resolution will be set forth below, and in view of the complexities of this action and its evolution, leave will be granted to move within twenty

days of the filing of this opinion for its modification.

### The Parties and their Motions

Plaintiff Insurance Corporation of Hannover, Inc. ("Hannover") is an Illinois corporation which sought to enforce an obligation against LARSA by the filing of this action. Thereafter the Hannover action was settled.

LARSA is a reinsurance company incorporated under the laws of the Republic of Panama. It went into statutory reorganization on April 6, 1990 under the protection of the National Commission for Reinsurance of the Republic of Panama ("NCR"). NCR on July 3, 1993 deemed the reorganization terminated and sought possession of any assets held for the benefit of LARSA and sought summary judgment in accordance with Rule 56(a), Fed.R.Civ.P. to assert whatever rights LARSA possesses.

Counsel for the court appointed liquidator of LARSA has moved for the new liquidator to be substituted for LARSA as the real party in interest. That motion has been granted separately. Rochelle Corson, counsel representing the former management of LARSA ("Corson"), has sought a stay of these proceedings pending the resolution of proceedings apparently pending in Panama. Counsel for the liquidator moved for sanctions against Corson. That motion was denied separately.

Defendant and Counterclaim Plaintiff Citibank, N.A. ("Citibank") is a national banking corporation organized under New York law, which as trustee held certain assets of LARSA (the "Trust") under a trust agreement. It seeks summary judgment in accordance with Rule 56, Fed.R.Civ.P. discharging its obligation as trustee and for attorneys' fees.

Third Party Defendant Salvatore R. Curiale, Superintendent of Insurance of the State of New York ("Curiale" or the "Department") is responsible for the conduct of an audit of the Trust of which Citibank is the trustee.

Intervenor Robinson, Brog, Leinwand, Reich, Genovese and Gluck, P.C. ("Robinson Brog") is a New York law firm that seeks to enforce an order directing payment of its legal fees.

Intervenor Milledge, Iden & Held ("MIH") is a New York law firm seeking summary judgment in accordance with Rule 56, Fed. R.Civ.P. in the amount of its fees and disbursements to enforce an attorneys' lien for legal fees.

Intervenor Dunshaw Patton Financial Holdings Ltd. ("Dunshaw"), a Panamanian corporation, seeks to enforce a Panamanian judgment against LARSA.

Interpleader Defendant Banco Cafetero, S.A. ("Cafetero") is a Panamanian bank which seeks summary judgment to enforce payment of an obligation and judgment of LARSA from the Trust Fund.

### Prior Proceedings

This action was initiated by Hannover on December 3, 1990 and assigned to the Honorable Miriam G. Cedarbaum. It was reassigned to the Honorable Pierre N. Leval on June 25, 1991.

Citibank filed its answer and counterclaim for interpleader (the "Interpleader") on June 18, 1991.

The case was closed upon the representation of settlement on October 15, 1991 and reopened on March 15, 1993. An order was entered on July 22, 1993 determining the amount and enforcing the attorneys' lien of Robinson Brog. On September 15, 1993 the action of Hannover was settled and its claim resolved.

On October 18, 1993, a third party complaint against the Department was filed by NCR and on November 22, 1993 an order to show cause was filed by LARSA seeking determination of certain of the issues relating to the attorneys' liens. On January 24, 1994 the action was reassigned to this court upon the elevation of Judge Leval to the Court of Appeals.

On January 24, a pretrial conference was held during which it was determined that the resolution of the matter would be assisted by the completion of the Department's then ongoing audit of the Trust and all motions were deferred for that purpose. The audit having been substantially, but not finally completed,

all motions were heard on July 6 and considered submitted at that time.

### The Facts

In order to be eligible for the placement of insurance business by excess line brokers licensed in the State of New York, LARSA, an unauthorized insurer within the meaning of the New York Insurance Law, established the Trust pursuant to New York State Insurance Department Regulation No. 41, 11 NYCRR 27.5 ("Regulation 41"). This Regulation 41 Trust established by LARSA with Citibank was terminated on or about December 23, 1990, and subsequently an independent auditor's report found there to be total outstanding liability to United States policyholders in the amount of $523,041.65.

The Trust Agreement dated January 31, 1978, as amended on February 25, 1981 between LARSA and Citibank (the "Trust Agreement"), provided, among other things, for the establishment of the Trust. The Trust was funded by a letter of credit in the amount of $1,500,000 issued by Chase Manhattan Bank (the "Trust Property" or "Trust Fund"). The Trust Property was maintained by Citibank pursuant to the terms of the Trust Agreement until December 23, 1990, the date the Trust Agreement expired. Thereafter, Citibank retained and continues to retain the Trust Property as a fiduciary, in accordance with New York law and at the direction of the Department as representative of all potential beneficiaries under the Trust Agreement, until the conditions for release of the Trust Property are fulfilled.

The claims asserted in the Interpleader, in the aggregate, exceed the value of available funds, which as of March 8, 1994 totalled $1,500,000 in principal and $87,884.49 in interest. Due to the length of time that has passed since the 1990 audit, a current audit is being performed so that the current status of LARSA's outstanding liabilities can be determined.

In 1984 and 1985, LARSA and Hannover entered into certain reinsurance contracts. LARSA's obligations to Hannover were secured by a letter of credit issued by Cafetero. The performance of the agreements with Hannover became the subject of a dispute which resulted in the initiation of the this action in which Hannover sought a recovery of over $2 million. Hannover also initiated an action against Cafetero in the Central District of California to require payment of its letter of credit.

On April 6, 1990, LARSA went into statutory reorganization proceedings in Panama under the protection of NCR.

The audit report required by the regulations of the Department was initially prepared by Peat, Marwick & Mitchell on or about January 28, 1991 and was delivered to Citibank and the Department on or about February 1, 1991. The audit report, *inter alia*, disclosed that LARSA has liabilities in the United States which may result in multiple claims against the Trust Property, including potential liabilities for claims on direct insurance business underwritten by LARSA in the United States in the amount of $440,114.12 and losses of $82,927.53, for a total of $523,041.65 (collectively referred to herein as the "Reserve Amount"). Because of challenges to the initial audit, a revised audit has now been undertaken by Horwath & Co. However, it is not anticipated that the results in gross amount will differ materially from the earlier audit.

On November 18, 1991, LARSA filed an ancillary proceeding in the United States Bankruptcy Court for the Southern District of New York pursuant to § 304 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to § 304(b)(1) of the Bankruptcy Code, the Bankruptcy Court issued a preliminary injunction staying Hannover's prosecution of both of the above-described federal court actions. On February 17, 1993, Judge Leval in *In re Ocana*, 151 B.R. 670, S.D.N.Y.1993, on appeal, issued a decision reversing the preliminary injunction imposed by the Bankruptcy Court. In vacating the order of the Bankruptcy Court staying Hannover's action against Cafetero, Judge Leval stated: "It seems clear that the reversionary right is properly subject to control by LARSA's bankruptcy court." (p. 675).

On June 11, 1993, Hannover, LARSA and Cafetero agreed to resolve the outstanding litigation between them by entering into two settlement agreements. Pursuant to the

first settlement agreement (the "First Settlement Agreement"), the three parties agreed that Hannover would be paid $2.3 million and that the pending actions against Cafetero and LARSA would be dismissed with prejudice.

In the second settlement agreement (the "Second Settlement Agreement"), LARSA and Cafetero agreed that Cafetero would be indemnified by LARSA in the amount of $1 million in connection with payments Cafetero made to Hannover pursuant to the First Settlement Agreement, and that LARSA would pay Cafetero the indemnity amount plus 7.5% interest per annum and pledge as collateral its reversionary interest in the sums on deposit at Citibank that constitute the Trust Property.

Pursuant to the First Settlement Agreement and the Second Settlement Agreement (collectively, the "Settlement Agreements"), Cafetero paid Hannover $1 million. LARSA on July 20, 1993 wrote to Citibank directing that Cafetero be reimbursed from the Trust Property.

The General Release executed by Hannover in favor of LARSA, dated June 16, 1993, states as follows:

Releasor covenants and agrees with and warrants to Releasee that Releasor releases and waives any claim it may have as a policyholder or intended beneficiary against the New York Trust Fund which is the subject matter of Case No. 90 CV 7734 (PNL) in the United States District Court for the Southern District of New York, and Releasor will never institute, prosecute, or assert, or ... aid in the institution, prosecution, or assertion against Releasee or anyone claiming by, through, or under Releasee, or any of Releasee's agents, attorneys, or employees, of any claim, suit, action or defense at law or otherwise, known or unknown, on account of any act, matter, cause, or thing whatsoever from the beginning of time to the date hereof.

On July 7, 1993, pursuant to Article 57 of Law 56 of December 20, 1984 of the Republic of Panama, NCR deemed the reorganization of LARSA terminated and, pursuant to Panamanian law, took possession of LARSA's holdings and assumed administration of all of its assets. On August 4, 1993, NCR requested a judicial order from the Panamanian Courts for the forced liquidation of LARSA.

Robinson Brog has rendered services as local counsel in connection with the commencement of the § 304 ancillary proceeding, a hearing held before the Bankruptcy Court in connection with the § 304 proceeding, and responding to Hannover's appeal of the Bankruptcy Orders. As a consequence, Robinson Brog was owed the sum of $13,111.50 for services and $3,207.34 for disbursements and expenses. On July 16, 1993, Robinson Brog filed a petition (the "Petition"), seeking an order enforcing an attorney's lien arising pursuant to Judiciary Law § 475 and enforcing such lien against the Trust Fund currently being held by Citibank.

On July 22, 1993, in connection with the Petition, which was unopposed, Judge Leval signed an order (the "Order") provisionally granting Robinson Brog an attorneys' lien in the amount of $16,318.34, for services rendered as local counsel for LARSA. The Order further provided that "upon disbursement of the proceeds currently in the Trust Fund, Citibank, N.A. shall be required to retain the sum of $16,318.84 which may be used on further order of this Court to satisfy the lien of Robinson Brog."

In September 1992, MIH had been retained by LARSA to assist it in negotiating the settlement of the litigation between LARSA and Hannover and Cafetero at the agreed rate of $165 per hour, to be billed monthly. Until May 1993, MIH received payment for each invoice within thirty (30) to sixty (60) days of the date of any such invoice, without objections.

The intensity of the representation of LARSA increased in May of 1993 and the settlement agreement between LARSA and Cafetero was drafted and initialled by counsel for Cafetero and LARSA on June 13, 1993. Duly authorized representatives of LARSA and Cafetero executed the settlement agreement in Panama shortly thereafter.

The statements issued by MIH for work performed during May 1993 and June 1993 were not paid prior to the reintervention of

LARSA by the Panamanian government in July 1993, nor have they been paid since.

Dunshaw held a promissory note of LARSA in the amount of $500,000, dated October 7, 1991. Laurencio Jaen Ocana executed the note on behalf of LARSA and was also the president of Dunshaw. The Note provided as follows:

> The Promissory Note shall be governed by, and construed in accordance with, the laws of the Republic of Panama. Exclusive venue for all disputes related to this Note, shall be Panama City, Republic of Panama. Amounts due upon this note are not effected by any other contract disputes between Maker and Holder except as set forth [elsewhere in the Note].

A financing statement (UCC) was filed with the County Clerk of New York County on June 16, 1993 and with the Department of State of the State of New York the following day. On January 20, 1994 Dunshaw obtained a judgment, denominated in Panamanian currency, of B425,374.16 (roughly equivalent to US $425,000 at 1993 exchange rates, *see* The World Almanac 798 (1994)) from the Second Judicature of Civil Court of the First Judicial Circuit of Panama.

### The Motions to Intervene Are Granted

MIH, Robinson Brog and Dunshaw have sought to intervene to assert their claims against the Trust Fund. No opposition to the intervention has been filed, as distinct from the merits of the asserted claims. The motions to intervene are therefore granted.

### Cafetero Is Not Entitled to the Trust Fund but is Entitled to Summary Judgment

■ Prior to the settlement of the claim against LARSA, the parties disputed whether or not Hannover was a "policyholder" pursuant to the terms of the Trust Agreement under which Citibank held funds belonging to LARSA. That issue was not resolved in the course of the settlement.

The General Release executed by Hannover, as Releasor, in favor of LARSA, as Releasee, dated June 16, 1993, as quoted above released any claim Hannover had.

As set forth above, Cafetero advanced $1,000,000 on behalf of LARSA to Hannover in connection with the settlement. In order to guarantee to Cafetero the reimbursement of said advance, LARSA agreed to deliver to Cafetero an indemnity collateralized by the Trust for up to $1,000,000 plus interest accrued thereon.

The Trust Agreement sets forth four conditions which must be complied with in order for a claim to be perfected against the Trust Fund assets. These four conditions are summarized below:

1. A judgment must be obtained by a policyholder against LARSA;
2. A judgment must become final;
3. A certified copy of said judgment must be filed with the trustee; and
4. Thirty days must pass from the date that the certified copy of the judgment is filed with the trustee.

Since Cafetero is neither a policyholder nor a judgment creditor it has no claim against the money held in the Trust Fund. Once the funds are released to LARSA, Cafetero has a claim against those funds, and an obligation to execute and deliver the mortgage releases simultaneously with or immediately following the payment by LARSA of the funds owed to Cafetero.

Cafetero has sought to fulfill the first of the conditions, that of being a policyholder, by claiming an assignment of Hannover's claim. As has been noted, no documents submitted on these motions establish that in fact Hannover is indeed a policyholder. Even more significant, there is no evidence of any assignment from Hannover to Cafetero. The dealings between these parties were conducted by experienced legal counsel, and yet there is no document by its terms or its operation which constitutes an assignment.

Cafetero on the other hand is entitled to summary judgment against the funds of LARSA on its indemnity claim, and no dispute has been raised in that connection.

■ It may well be that LARSA's irrevocable instructions to Citibank perfected the pledge of its reversionary interest made in the Second Settlement Agreement and transferred control of $1 million plus interest in the funds in the account constituting LAR-

SA's reversionary interest. Under New York law, monies deposited in a bank account create a debtor/creditor relationship between the holding institution and the depositor, with the depositor's property serving as the debt owed by the holding institution to the depositor. This property is an intangible right, which is transferrable via a pledge. *See United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1158 (2d Cir.1986); *Miller v. Wells Fargo International Corp.,* 540 F.2d 548, 560 (2d Cir.1976); *In re Interstate Dep't Stores, Inc.,* 128 B.R. 703, 705 (Bankr. N.D.N.Y.1991). It appears, therefore, that LARSA relinquished its rights and control over the Trust Property to Cafetero by means of the Second Settlement Agreement and the irrevocable instructions to Citibank, and that thereby Cafetero obtained exclusive control and irrevocable authority over so much of LARSA's reversionary interest in the Trust Property that was the subject of the pledge. *In re Interstate Dep't Stores, Inc.,* 128 B.R. at 705. While summary judgment is appropriate, its enforcement must await a further proceeding.

### The Attorneys Are Not Entitled to the Trust Fund

■ The applications by MIH and Robinson Brog for payment of their attorneys' fees out of the Trust Fund in order to discharge their attorneys' lien are governed by Section 475 of the New York Judiciary Law. That section provides, in pertinent part, that:

the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come ...

■ Significantly, Section 475 does not authorize the Court to impose a charging lien upon any and all property owned by the attorney's client. *In re Shirley Duke,* 611 F.2d 15, 18 (2d Cir.1979); *Morey v. Schuster,* 159 A.D. 602, 609, 145 N.Y.S. 258, 262–63 (1913), *aff'd,* 217 N.Y. 639, 112 N.E. 1066 (1916). Rather, an attorney is limited to a lien on the judgment "in his client's favor." The attorney may collect out of funds or property he obtains on behalf of his client, *In re Shirley Duke,* 611 F.2d at 18; *Ekelman v. Morano,* 251 N.Y. 172, 176 (1929), on the theory that "it is the attorney who has created the fund out of which he is paid by his efforts." *Goldstein, Goldman, Kessler & Underberg v. 4000 East River Road Assocs.,* 64 A.D.2d 484, 487, 409 N.Y.S.2d 886, 887 (4th Dept.1978), *aff'd* 48 N.Y.2d 890, 424 N.Y.S.2d 896, 400 N.E.2d 1348 (1979).

■ Where, as here, the attorneys have defended or protected their client's interest and property without obtaining an affirmative recovery, they are not entitled to a lien on property that their client retains. *Ekelman,* 251 N.Y. at 176; *Desmond v. Socha,* 38 A.D.2d 22, 24, 327 N.Y.S.2d 178 (3d Dept. 1971), *aff'd,* 31 N.Y.2d 687, 337 N.Y.S.2d 261, 289 N.E.2d 181 (1972). In *Ekelman,* an attorney represented his client in a suit by the client's husband to divest her interest in property owned jointly by husband and wife. New York's Court of Appeals held that even if the client had succeeded in keeping her interest in the property, no charging lien would attach: "a judgment in her favor would give to the [attorney's client] no money or property which she did not possess before the attack was made and repulsed." 251 N.Y. at 1786. *See Desmond v. Socha, supra,* 38 A.D.2d at 24, 327 N.Y.S.2d at 180 ("Where the attorney's services do not create any proceeds but consist solely of defending a title or interest already held by the client, there is no lien on the [property retained]").

In *Rosenman & Colin v. Richard,* 850 F.2d 57 (2d Cir.1988), the Second Circuit reversed a decision of this Court which had granted a lien to the plaintiff law firm for legal fees it had purportedly earned in the underlying litigation which concerned a dispute regarding the parties' respective rights to certain property and sums of money. There, the Second Circuit squarely held that, under New York law, an attorney's lien is enforceable only against its client's affirmative recovery in the underlying lawsuit rather than against the full amount of money and property which its client allegedly retained pursuant to a judgment in that lawsuit. 850 F.2d at 62. *See also Martz v. Valley Stream,* 22 F.3d 26, 30 (2d Cir.1994).

Neither Robinson Brog nor MIH performed legal services for LARSA which resulted in the Trust Fund or an affirmative recovery to the benefit of its client. Furthermore, neither law firm alleges that it secured any judgment giving to its client any money or property the client did not possess prior to the time that it commenced serving the client.

Regulation 41 (11 N.Y.C.R.R. Section 27.5) provides that a foreign or alien insurance company not licensed to do business in New York must establish an irrevocable trust for the benefit of its "policyholders and beneficiaries." Furthermore, "in the event the insurer is found to be insolvent pursuant to the laws of its domiciliary jurisdiction, the trustee shall disburse such trust funds at the direction of the Superintendent of Insurance of the State of New York." Such disbursements are to be made by the Superintendent pursuant to the provisions of Article 74 of the Insurance Law of the State of New York.

The Trust Agreement, pursuant to which the Trust Fund was established, provides that the Trust Fund "shall be available as security for its [LARSA's] American policyholders." The Trust Agreement provides, in Article I, the following definition of terms:

"AMERICAN POLICY" means any contract or policy of insurance or reinsurance heretofore or hereafter issued or any agreement to insure made by the Company (LARSA) wherein the premiums and losses are expressed to be payable in U.S.A. currency.

The Trust Agreement also provides:

"Policyholders" is defined to mean those policyholders of American policies who are (A) Citizens of or domiciled in the United States of America or (B) Corporations organized under the laws of the United States of America or any of the States, Territories or possessions, thereof ... and any other Persons, Corporations or Associations who are holders, assignees, pledgees or mortgagees of American policies.

The claims by lawyers asserted against the Trust Fund are not being made for the protection of LARSA's "Policyholders or beneficiaries" as contemplated by Regulation 41, nor by LARSA's "American Policyholders," as defined by the Trust Agreement. Indeed, the Order of this Court of July 22, 1993 (the "Order") which granted an attorneys' lien pursuant to § 475 of the New York Judiciary Law against the Trust Fund in favor of Robinson Brog was erroneous, as a matter of law.

It was endorsed by Judge Leval as a consequence of an Order to Show Cause dated July 16, 1993 which was submitted, without opposition, on July 22, 1993. At the time, NCR had recently intervened and undertaken the administration of LARSA.[1] Furthermore, no mention of Robinson Brog's motion or the Order was made at the July 23, 1993 status conference and neither the motion nor the Order were served upon NCR's counsel until well after the expiration of the time for the filing of objections.

In any case, an order is not entitled to "law of the case" treatment when there is a need to correct a clear error or prevent manifest injustice. See Sanders v. Sullivan, 900 F.2d 601, 605 (2d Cir., 1990); Doe v. New York City Dep't of Social Services, 709 F.2d 782, 789 (2d Cir.), cert. denied sub nom.; Catholic Home Bureau v. Doe, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); see also, Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) ("law of the case" guides court's discretion); Virgin Atlantic Airways, Ltd. v. National Mediation Board, 956 F.2d 1245 (2d Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992). Indeed, in circumstances such as these, where an order in an action involving multiple parties and multiple claims does not decide all of the claims of all of the parties, and where no final judgment has been entered, both the Rule 54(b), Fed.R.Civ.P., and the inherent power of the Court, permit the reconsideration of the Order. See Virgin Atlantic Airways, Ltd., et al. v. National Mediation Board, 132 F.R.D. 342 (E.D.N.Y.1990) (imposing sanctions on counsel who resubmitted a motion which had been denied on narrow grounds, in

---

1. The NCR terminated the reorganization of LARSA and intervened, taking control of its assets and administration by Resolution dated July 7, 1993.

the absence of a change in controlling law, new evidence, clear error or manifest injustice); *aff'd in relevant part,* 956 F.2d 1245 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992).

As a rule, New York Courts have long required creditors seeking to attach trust funds of foreign insolvent insurers to pursue their claims through the foreign liquidation proceeding. *See In re Rubin & Halevy, as Liquidators of the Israel Reinsurance Co.,* 160 B.R. 269, 280 (Bankr.S.D.N.Y. 1993) (citing *Stoddard v. City Equitable Fire Insurance Co.,* 207 A.D. 249, 201 N.Y.S. 808 (1st Dept.1923), *aff'd,* 238 N.Y. 147, 144 N.E. 484 (1924)).

Therefore, the attorneys' liens cannot be discharged against the Trust Fund.

### *Robinson Brog and MIH Are Entitled to Summary Judgment*

No factual or legal contention has been raised with respect to lawyers' entitlement to a summary judgment in the amount of its fees and disbursements, and such a judgment is appropriate.

The enforcement of such judgments is another matter. For the reasons just set forth, the judgment cannot be enforced against the Trust Fund. Enforcement against the remainder to be paid for the benefit of LARSA is another matter for determination in this or some other proceeding.

### *The Judgment of Dunshaw Cannot Be Enforced Against the Trust Fund in this Proceeding*

Dunshaw's answer to Citibank's interpleader and its motion for summary judgment seek to collect on its judgment and claim against LARSA to be satisfied by the remainder of the Trust Fund, after the payment of claims of American Policyholders. That claim is explicitly made pursuant to the promissory note which allegedly exists between Dunshaw and LARSA.

The exclusive forum selection clause contained in the note, quoted above, mandates the dismissal of Dunshaw's claim. Such clauses are presumptively valid in international transactions. *See Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1362–63 (2d Cir.1993). To treat them otherwise hinders American international business and trade and interferes with the smooth functioning and growth of global commerce. *Bremen,* 407 U.S. at 9, 92 S.Ct. at 1912. Contractual forum selection clauses are also enforced as a matter of international comity. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 629, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985). Further, the Supreme Court has articulated an economic basis for the presumption that forum selection clauses are valid—namely that freely bargained contracts generally should be enforced because the financial effect of forum selection is probably reflected in the value of the contract as a whole. *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 594, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622 (1991).

This presumption of validity may only be overcome by a clear showing that the forum selection clause is unreasonable under the circumstances. *Bremen,* 407 U.S. at 10, 92 S.Ct. at 1913; *Roby,* 996 F.2d at 1363. A party challenging a contractual forum selection clause can demonstrate the unreasonableness of the clause only by demonstrating that: (i) the selection of forum in the contract was the result of fraud or overreaching, *Carnival,* 499 U.S. at 595, 111 S.Ct. at 1528; *Bremen,* 407 U.S. at 12–13, 92 S.Ct. at 1914–15; (ii) he or she will be effectively deprived of a "day in court" due to the grave inconvenience or unfairness of the selected forum, *Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917; (iii) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, *Roby,* 996 F.2d at 1363; or (iv) if the clauses contravene a strong public policy of the forum state, *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916.

No such showing has been made here. No fraud or overreaching relative to the inclusion of the forum selection clause in the promissory note is alleged, no evidence to that effect proffered. The fact that Dunshaw was able to obtain a judgment in Panama seems to indicate that when Dunshaw needs a day in court in Panama, it can get one. Similarly, it does not appear that the law of

the chosen forum will deprive Dunshaw of a remedy. Panamanian law appears to have served Dunshaw's cause fairly in the past, and will likely do so again.

Finally, no strong public policy of this jurisdiction has been pointed out—nor is the Court aware of any—that would be contravened by the enforcement of this selection of forum. Additionally, the Court notes that both parties to the note are commercial entities of equal sophistication, having equal bargaining power. No impediment exists to the note's enforceability (if it is determined to be legitimate and free of fraud) under the laws of Panama. *See generally Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361, 365 (S.D.N.Y.1975).

Accordingly, without question, the exclusive forum selection clause in the note under which Dunshaw has made claim is not unreasonable under the circumstances and thus is enforceable, as a matter of law.

In addition, for summary judgment purposes a colorable factual issue has been raised by NCR—the execution of the note and its receipt by the same person, who, it is alleged, was responsible for the acts which resulted in the reorganization of LARSA. Further, the necessary proof of the foreign judgment has not been properly adduced. Finally, of course, the funds of the Trust, for reasons already set forth are beyond the reach of a commercial judgment creditor. What relief might be available in the event that the funds are released to NCR or the person or entity standing in LARSA's shoes is not an issue that has been presented as yet in this proceeding.

### Citibank is Entitled to Legal Fees

■ Article II, Paragraph Sixth of the Trust Agreement provides that, "The fees of the Trustee and all reasonable expenses of the Trustee and other disbursement expenses of the Trustee and counsel fees and other disbursements incurred in and about the administration of the said Trust shall be a first lien against the Trust Fund." The only grounds for setting this provision aside offered by NCR is that Citibank has been represented by inside counsel, but that is a distinction not provided for within the Trust Agreement.

Citibank is entitled to recover its counsel fees.

### The Remainder of the Fund is to be Paid as Directed by the Administrator of LARSA's Affairs

Upon the completion of the pending audit, the amount to be held in reserve will be determined and that determination will be made by the Department and held in accordance with the regulations of the Department for any outstanding policyholders. The remainder of the Trust Fund will thereafter no longer be subject to the Trust and will be paid over to the successor in interest of LARSA. The method and timing of that payment will be determined by that successor subject to any further orders of this or any other court.

### No Grounds for a Stay Have Been Presented

■ Rochelle M. Corson, Esq. has appeared on behalf of LARSA and has sought a stay pending the resolution of proceedings which she has represented are going forward in Panama. However, NCR appears to be the statutory administrator of LARSA and, under Panamanian law, has the responsibility to administer LARSA and its assets. The NCR was created by Law 56 of December 20, 1984 of the Republic of Panama and is a division of the Ministry of Commerce and Industry of the Republic of Panama, which is charged with the supervision and administration of Panamanian Insurance and reinsurance companies.

Law 56 provides as follows:

ARTICLE 55.—

If the National Commission for Reinsurance should decide that reorganization of the entity is convenient, a plan harmonious with the depositions of Article 50 of this Law must be elaborated, and include the following:

1. Designation of an Executive Committee, comprising the number of persons deemed necessary for privately exercising administration and control of the entity while reorganization is in courses. The Executive Committee will be staffed by persons with no less than five (5)

years of experience in administrating the business of reinsurance. Such persons will be designated by the National Commission for Reinsurance after consultations with national association(s) of reinsurers. The Committee will dictate its own regulations for holding meetings and making decisions.

2. General phases with respect to the method of reorganization, for gaining the objective of returning the entity to efficient and secure operation, considering the welfare of the reinsured, creditors, stockholders and partners.

3. Instructions for removal of any director, dignitary or managing director, or destitution of any administrator or other employee for negligent or criminal action that may have cause of the intervention and reorganization of the entity.

4. The term of the intervention should be completed at reorganization, but may be extended for an equal length of time, if requested by the Executive Committee itself.

Law 56 further provides for the Actions which can be taken by the NCR should the reorganization of LARSA be unsatisfactory. In that regard, Law 56 provides as follows:

ARTICLE 57.—

Upon expiration of the period of reorganization, or its extension in the event of not being completed satisfactorily the reorganization, or in any moment that the Executive considers it necessary because the entity is insolvent, or other reason that impossibilitates its redemption, the National Commission for Reinsurance will deem its reorganization terminated and solicit the bankruptcy or forced liquidation of the entity, as may be the case.

\* \* \* \* \* \*

No recourse will prevail against the Resolution of the National Commission for Reinsurance.

Pursuant to Article 57, by Resolution No. CNR–17 of July 7, 1993, the NCR decreed the termination of the reorganization which had been previously approved. As indicated in the Resolution, after receiving an unsatisfactory audit report, as well as considering other elements of importance regarding the reorganization, the NCR terminated the reorganization "finding that there exists reasons that make impossible or extremely difficult to continue the Plan of Reorganization approved and to obtain the recovery of the enterprise." On August 4, 1993, NCR filed a Petition for the forced liquidation of LARSA. That request apparently has been approved in view of the putative amount of the Liquidator.

No evidence has been submitted at this stage to establish that the interests Ms. Corson represents are the interests which stand in the shoes of LARSA. In fact, the evidence to date indicates to the contrary. Moreover, this Court is the only tribunal that possesses jurisdiction over the Trust Property, and no decision issued by a Panamanian court can change that fact. While the courts of Panama might be able to order LARSA to pay Cafetero's other claims, they could not order that these claims be paid from the Trust Property itself because they lack jurisdiction over those funds. *See Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964) (recognizing rule that federal court having custody of property has exclusive jurisdiction to proceed) (citing *Princess Lida v. Thompson,* 305 U.S. 456, 465–68, 59 S.Ct. 275, 280–81, 83 L.Ed. 285 (1939)).

Moreover, it is a well-settled principle of law that:

concurrent jurisdiction in two courts does not necessarily result in a conflict.... The mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction.

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984). *See also China Trade and Development Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987) (noting general rule that parallel proceedings in foreign and U.S. courts are generally permissible, as judgment in one proceeding can be pled as *res judicata* in the other).

In *Herbstein v. Bruetman,* 743 F.Supp. 184 (S.D.N.Y.1990), this Court de-

nied a defendants' request for a stay of proceedings pending the completion of related litigation in Argentina. Noting that the Argentine action was still at a preliminary stage, this Court stated that "[w]ithout a final judgment from another court, surrender of jurisdiction is justified only under exceptional circumstances." *Id.* at 188, 190.

Circumstances have not yet been established which would justify a stay of the pending matters.

### Conclusion

For the reasons set forth above, the motions for summary judgment on behalf of Cafetero, MIH and Robinson Brog are granted. The motion of Dunshaw for summary judgment is denied with leave to renew. Leave is granted to make within ten days any additional submissions seeking a modification of this opinion.

In view of the conclusions reached above, a further hearing will be scheduled at the convenience of counsel, if necessary, for any further relief with respect to any reversionary interest for the benefit of LARSA following the completion of the current audit.

It is so ordered.